JAMES D. NGUYEN (State Bar No. 179370)
    jimmynguyen@dwt.com
SEAN M. SULLIVAN (State Bar No. 229104)
    seansullivan@dwt.com
DAN LAIDMAN (State Bar No. 274482)
    danlaidman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

ELIZABETH MCNAMARA (*admitted pro hac vice*)
    lizmcnamara@dwt.com
DAVIS WRIGHT TREMAINE LLP
1633 Broadway, 27th Floor
New York, New York 10019-6708
Telephone: (212) 489-8230
Fax: (212) 489-8340

Attorneys for Defendant
MEN'S JOURNAL LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID BOORSTEIN, individually and on behalf of all others similarly situated,<br><br>                          Plaintiff,<br><br>          vs.<br><br>MEN'S JOURNAL LLC, a Delaware limited liability company,<br><br>                          Defendant. | Case No. **12-CV-00771-DSF-E**<br>Assigned to Hon. Dale S. Fischer<br><br>**CLASS ACTION**<br><br>**DEFENDANT MEN'S JOURNAL LLC'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:    April 2, 2012<br>Time:    1:30 p.m.<br>Crtrm.:  840<br><br>State Action Filed: December 22, 2011<br>Removed: January 27, 2012 |

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 2, 2012 at 1:30 p.m. in Courtroom 840, located at 255 E. Temple Street, Los Angeles, CA 90012, Defendant Men's Journal LLC ("Men's Journal") will move the Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), for an order dismissing all of the claims asserted in Plaintiff's Complaint against Men's Journal.

Plaintiff's Complaint should be dismissed for the following grounds:

(1)    The Court should dismiss Plaintiff's cause of action under California Civil Code § 1798.83 (California's "Shine the Light" law) pursuant to Rule 12(b)(6) for failure to plead that Plaintiff was injured by any alleged violation of the Shine the Light statute by Men's Journal, since injury is a statutory requirement for standing to sue under the law.  In addition, Plaintiff does not plead he attempted to make a request for a Shine the Light disclosure under the statute, nor even that he sought to find any Shine the Light notice information on the Men's Journal web site;

(2)    The Court should dismiss the second cause of action for violation of California's Unfair Competition Law (California Business & Professions Code § 17200 *et seq.*) because:

(a) It depends on Plaintiff's Shine the Light claim under California Civil Code § 1798.83-.84, which fails for the reasons set forth above;

(b) It fails to allege that he suffered injury in fact and lost money or property, which is required for a claim under California's Unfair Competition Law;

(c) Plaintiff fails to state a claim justifying the restitution and injunctive relief remedies being sought under the Unfair Competition Law;

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(3)     Plaintiff lacks Article III standing, as his Complaint fails to allege that he suffered any injury-in-fact.  The Complaint should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).  Accordingly, the Court should dismiss plaintiff's Complaint in its entirety.

This Motion is based upon Federal Rules of Civil Procedure 12(b)(6) and Rule 12(b)(1).  This Motion is also based upon this Notice, the attached Memorandum of Points and Authorities, and upon such further oral and/or documentary evidence that may be properly presented at or before the time of the hearing.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place telephonically on February 22, 2012 and through subsequent correspondence.

DATED:  March 2, 2012                    DAVIS WRIGHT TREMAINE LLP
                                         JAMES D. NGUYEN
                                         SEAN M. SULLIVAN
                                         ELIZABETH MCNAMARA
                                         DAN LAIDMAN


                                         By:  _____s/James D. Nguyen_____
                                                    James D. Nguyen

                                         Attorneys for Defendant
                                         MEN'S JOURNAL LLC

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ...................................................................................... 1

II.  LEGAL FRAMEWORK AND PLAINTIFF'S ALLEGATIONS ................ 3

   A.   The Shine the Light Law ............................................................... 3

      1.   Compliance Option #1: The Information-Sharing Disclosure and Contact Notice Requirements ........................... 4

      2.   Compliance Option #2: The Opt-in/Opt-Out Alternative ....................................................................... 4

      3.   The Statutory Cause of Action for Injured Customers .............. 6

   B.   The Complaint Against Men's Journal ........................................... 6

      1.   Plaintiff's Allegation of a Limited STL Violation .................... 7

      2.   The UCL Cause of Action ......................................................... 9

   C.   Men's Journal's Privacy Policy ...................................................... 9

III. ARGUMENT .......................................................................................... 10

   A.   Boorstein Fails to State Claim Under Rule 12(b)(6) for Violation of the STL Law Because He Does Not Allege Any Cognizable Injury ........................................................................ 11

      1.   Courts Have Rejected Boorstein's Injury Theory of Lost Monetary Value in Personal Information ........................ 11

         a.   No "Injury-in-Fact" from Article III Cases ................... 12

         b.   No Damage for Breach of Contract Claims ................... 13

      2.   The Alleged Lack of Contact Notice on the Men's Journal Web Site Has Not Injured Boorstein ........................... 16

   B.   Boorstein Fails to State a Claim under the UCL ................................ 19

   C.   The Court Should Dismiss the Complaint Under Rule 12(b)(1) for Lack of Article III Standing ...................................................... 22

      1.   Boorstein Does Not Allege Injury-In-Fact for Article III Purposes ........................................................................ 22

      2.   Boorstein Does Not Have Standing Merely Because the STL Law Provides a Private Right of Action ..................... 23

IV.  CONCLUSION ...................................................................................... 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

Page

**CASES**

Aguilera v. Pirelli Armstrong Tire Corp.,
   223 F.3d 1010 (9th Cir. 2000)................................................ 14

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ............................................... 10, 18

Babbitt v. United Farm Workers Nat'l Union,
   442 U.S. 289 (1979) .................................................... 22

Bell Atl. Corp. v. Twombly,
   550 U.S. 554 (2007) ............................................... 10, 13

Blaylock v. First Am. Title Ins. Co.,
   2008 WL 8741396 (W.D. Wash. Nov. 7, 2008) ...................... 11

Californians for Disability Rights v. Mervyn's, LLC,
   39 Cal. 4th 223 (2006) ................................................. 20

Cetacean Cmty. v. Bush,
   386 F.3d 1169 (9th Cir. 2004)...................................... 22, 23

Cohen v. Facebook, Inc.,
   798 F. Supp. 2d 1090 (N.D. Cal. 2011) .......................... 20, 21

Del Vecchio v. Amazon.com Inc.,
   2011 WL 6325910 (W.D. Wash. Dec. 1 2011) ....................... 13

Edwards v. First American Corp.,
   610 F.3d 514 (9th Cir. 2010), cert. granted, 131 S. Ct. 3022 (2011).......... 23, 24

Feitelberg v. Credit Suisse First Boston, LLC,
   134 Cal. App. 4th 997 (2005) ........................................ 21

First Am. Fin. Corp. v. Edwards,
   131 S. Ct. 3022 (2011) ................................................ 24

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,
   528 U.S. 167 (2000) .................................................... 22

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Gladstone Realtors v. Village of Bellwood,*
  441 U.S. 91 (1979)......................................................................... 22

*In re DoubleClick Inc. Privacy Litigation,*
  154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................... 14, 15

*In re Facebook Privacy Litigation,*
  2011 WL 6176208 (N.D. Cal. Nov. 22, 2011) .......................... 13, 15

*In re iPhone Application Litigation,*
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......................... 13, 20

*In re Jetblue Airways Corp. Privacy Litigation,*
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ....................................... 14, 15

*In re Zynga Privacy Litigation,*
  No. Cv-10-04680 JW (N.D. Cal. Nov. 22, 2011) ....................... 14, 15

*Jadeja v. Redflex Traffic Systems, Inc.,*
  764 F. Supp. 2d 1192 (N.D. Cal. 2011) .......................................... 23

*Korea Supply Co. v. Lockheed Martin Corp.,*
  29 Cal. 4th 1134 (2003) ................................................................. 21

*Krantz v. Bt Visual Images,*
  89 Cal. App. 4th 164 (2001).......................................................... 19

*Kraus v. Trinity Mgmt. Servs., Inc.,*
  23 Cal. 4th 116 (2000) .................................................................. 21

*La Court v. Specific Media, Inc.,*
  2011 WL 2473399 (C.D. Cal. Apr. 28, 2011) ........................... 12, 13

*Lee v. Am. Nat'l Ins. Co.,*
  260 F.3d 997 (9th Cir. 2001).......................................................... 23

*Lewis v. Casey,*
  518 U.S. 343 (1996) ...................................................................... 22

*Low v. LinkedIn,*
  2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .......................... 12, 13

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ...................................................................... 24

iii

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Madrid v. Perot Systems Corp.*,
  130 Cal. App. 4th 440 (2005) ........................................................ 21

*Papasan v. Allain*,
  478 U.S. 265 (1986) ...................................................................... 18

*People v. Maultsby*,
  53 Cal. 4th 296 (2012) .................................................................. 11

*Raines v. Byrd*,
  521 U.S. 811 (1997) ...................................................................... 23

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*,
  290 F.3d 1055 (9th Cir. 2002)....................................................... 19

*Ruiz v. Gap, Inc.*,
  540 F. Supp. 2d 1121 (N.D. Cal. 2008) ......................................... 20

*Samuels v. Delucchi*,
  286 F.2d 504 (9th Cir. 1961).......................................................... 19

*Simon v. Eastern Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ........................................................................ 22

*Stasher v. Harger-Haldeman*,
  58 Cal. 2d 23 (1962) ..................................................................... 19

*State of Neb. ex rel. Dept. of Social Services v. Bentson*,
  146 F. 3d 676 (9th Cir. 1998)......................................................... 23

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ........................................................... 11, 22, 23

*Upland Police Officers Ass'n v. City of Upland*,
  111 Cal. App. 4th 1294 (2003) ...................................................... 17

*Van Ness v. Blue Cross of Cal.*,
  87 Cal. App. 4th 364 (2001)........................................................... 19

*Vivendi SA v. T-Mobile USA, Inc.*,
  586 F.3d 689 (9th Cir. 2009).......................................................... 8

*Warth v. Seldin*,
  422 U.S. 490 (1975) ...................................................................... 22

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

STATUTES

12 U.S.C. § 2607 ("RESPA") ................................................................ 24

California Business and Professions Code § 17200 ............................... 9, 19

California Business and Professions Code § 17204 ............................... 20

California Civil Code § 1798.83 ........................................................ 3, 20

California Civil Code § 1798.83(a) ............................................... 3, 4, 5, 16

California Civil Code § 1798.83(b) ..................................................... passim

California Civil Code § 1798.83(b)(1) ............................................... 5, 19

California Civil Code § 1798.83(b)(1)(A) ......................................... 4, 8, 18

California Civil Code § 1798.83(b)(1)(B) ......................................... 8, 16, 18

California Civil Code § 1798.83(b)(1)(C) ................................................ 4

California Civil Code § 1798.83(c) ................................................. 3, 5, 7

California Civil Code § 1798.83(c)(2) ................................................. 4, 5

California Civil Code § 1798.83(e) ......................................................... 3

California Civil Code § 1798.84 ............................................................. 3

California Civil Code § 1798.84(b) ..................................................... 6, 11

California Civil Code § 1798.84(c) ......................................................... 6

California Civil Code § 1798.84(d) ......................................................... 6

RULES

Federal Rule of Civil Procedure 12(b)(1) ......................................... 22, 24

Federal Rule of Civil Procedure 12(b)(6) ..................................... 10, 11, 23

CONSTITUTIONAL PROVISIONS

California Constitution, Article 1 § 1 ..................................................... 3

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

OTHER AUTHORITIES

Senate Bill 27 ("SB 27"), 2003 Cal. Stat. ch. 505 ........................................... 3, 5, 16

Webster's New Universal Unabridged Dictionary (2d ed. 1983).......................... 11

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

This action arises out of David Boorstein's claim that the privacy policy on *Men's Journal* magazine's website failed to provide sufficient notice of his rights under California's "Shine the Light" law (the "STL" law). But the Complaint contains no allegations to support a finding that Boorstein actually suffered any injury. Absent the required injury, Boorstein lacks standing to sue under the STL law, and his Complaint should be dismissed.

The STL law addresses the common (and lawful) practice of businesses sharing personal information about customers so third parties can directly market to those customers. The STL law does <u>not</u> prohibit this conduct. Rather, it gives customers a way to "shine the light" on businesses' information sharing practices so customers can decide whether to opt-out from sharing. But the Legislature designed the statute to avoid making it a "liability trap" for businesses. To that end, the STL law permits customers to sue only if they suffer actual "injury" from a violation.

Here, Boorstein does not allege any injury. He claims only that he provided personal information to Men's Journal when he subscribed to the magazine; he visited its website; and Men's Journal engaged in the "nearly ubiquitous practice" of sharing customer data to third parties for direct marketing purposes. Boorstein does <u>not</u> allege that (1) he requested STL disclosures about how Men's Journal may have shared his personal information with third parties; (2) Men's Journal failed to provide disclosures if he had asked; (3) he even tried to find out about his STL rights on the Men's Journal web site; (4) he was aware of Men's Journal's Privacy Policy, much less relied on it to his detriment; or (5) he tried to contact Men's Journal about anything related to use of his personal information. Nor does Boorstein allege he ever sold his personal data to anyone, tried to sell his data, or otherwise determined the value of his data was "diminished."

Despite his failure to allege any harm from Men's Journal's conduct, Boorstein

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

seeks monetary relief because he claims Men's Journal deprived him of the chance to profit from sale of his personal information — and he seeks to proceed on behalf of a putative class of Men's Journal California subscribers (which he mistakenly believes to be "millions of individuals").  Although the STL law has been in effect for over seven years, this is among the first cases to assert this novel claim (along with at least nine more putative class actions against other publishers filed by Boorstein's counsel contemporaneous with this action, all asserting virtually identical complaints.)

Based on the Complaint allegations, assuming that Men's Journal was required to comply with the STL law's <u>contact notice</u> requirements (which it was not) and further assuming that Men's Journal's website Privacy Policy violates those contact notice requirements (which it did not, because Men's Journal contends its website <u>complied</u> with the statute), the Court should dismiss the Complaint for these reasons:

<u>First</u>, Boorstein fails to allege the injury required for standing to sue under the STL law.  Straining to meet that injury requirement, Boorstein offers a speculative theory that Men's Journal deprived him of the chance to sell his own data to third-party advertisers and profit from the value of his personal information (or diluted the price he could fetch for his own data).  However, in similar privacy class actions, numerous courts have rejected this theory of injury when evaluating the analogous "injury-in-fact" requirement for Article III standing and the damage element for breach of contract claims.  This Court should reach the same conclusion.

<u>Second</u>, Boorstein's second cause of action for violation of California's Unfair Competition Law depends entirely on his STL claim.  For the same reasons that claim fails, the Court should dismiss his UCL claim.

<u>Third</u>, while the Court need not reach this issue since Boorstein fails to otherwise state a claim, the Court should also dismiss his Complaint for lack of Article III standing.  The same lack of actual injury which precludes Boorstein from having standing to sue under the STL law also dooms the Complaint for failure to meet Article III's "injury-in-fact" requirement.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    LEGAL FRAMEWORK AND PLAINTIFF'S ALLEGATIONS

### A.    The Shine the Light Law

The California Legislature enacted the "Shine the Light" law in 2003 (effective in 2005).  Cal. Civil Code §§ 1798.83-84.  The statute does not restrain the common practice of businesses sharing personal information about customers with third parties for those third parties to directly market to the customers.  Instead, it was merely "designed to shine light on how the companies with which we do business treat direct marketing information they accumulate about us."  *See* Request for Judicial Notice ("RJN") Exh. A at 113.  The legislation opens with this statement of purpose:

> (a) For free market forces to have a role in shaping the privacy practices of California businesses and for "opt-in" and "opt-out" remedies to be effective, Californians must be more than vaguely informed that a business might share personal information with third parties. Consumers must, for these reasons and pursuant to Section 1 of Article 1 of the California Constitution, be better informed about what kinds of personal information are purchased by businesses for direct marketing purposes.  With these specifics, consumers can knowledgeably choose to opt-in or opt-out or choose among businesses that disclose information to third parties for direct marketing purposes on the basis of how protective the business is of consumers' privacy.

> (b) Nothing in this act is intended to impose, and this act may not be construed to impose, any prohibition or requirement upon, restraint of, or prerequisite to, a business disclosing or exchanging personal information to third parties, including affiliated parties, for any lawful purpose, including direct marketing purposes.  This act, generally, and Section 1798.83 of the Civil Code, specifically, provides merely for descriptions of general business practices regarding direct marketing to be disclosed to customers after those practices have occurred and, for example, does not require that personal information associated with specific individuals be disclosed.

Senate Bill 27 ("SB 27"), 2003 Cal. Stat. ch. 505 (*see* RJN Exh. A at 229-30.)

The STL law applies to businesses with 20 or more employees that disclose customers' personal information to third-parties for direct marketing purposes.  Cal. Civ. Code §1798.83(a), (c) and (e).  It applies only to California customers.  A business can comply with the law in one of two ways.  It can either: (1) provide information-sharing disclosures about how it shares customer information with third parties, and give contact notice to consumers about how they obtain those disclosures

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

[Cal. Civ. Code §1798.83(a) and (b)]; or (2) adopt an alternate mechanism, whereby it gives customers a cost-free method to opt-in or out-out of information-sharing. [Cal. Civ. Code §1798.83(c)(2)].

### 1. Compliance Option #1: The Information-Sharing Disclosure and Contact Notice Requirements

If a covered business chooses the first compliance path, it must do two things set forth in subsections (a) and (b) of the STL statute. First, subsection (a) requires the business to provide customers information-sharing disclosures – *i.e.,* categories of personal information it has shared in the past year with third-party marketers, and the identities of those third-party recipients. Cal. Civ. Code § 1798.83(a).

Second, subsection (b) sets forth a contact notice requirement for the business to inform consumers how they can request a STL disclosure . A covered business must designate a mailing address, e-mail address, toll-free telephone or fax number "to which customers may deliver requests pursuant to subdivision (a)." (Emphasis added.) Then, the business has three options to use for notifying consumers about how to use its designated contact information to request a STL disclosure: (1) by training employees who "regularly have contact with customers" to provide the contact information if asked; (2) by adding to the home page of the company's website "a link either to a page titled 'Your Privacy Rights' or add the words 'Your Privacy Rights' to the home page's link to the business's privacy policy," with the linked web page containing the contact information for submitting a STL disclosure and a description of a customer's rights pursuant to the law; or (3) by making the contact information "readily available upon request of a customer at every place of business in California where the business or its agents regularly have contact with customers." Cal. Civ. Code § 1798.83(b)(1)(A)-(C).

### 2. Compliance Option #2: The Opt-in/Opt-Out Alternative

Subsection (c)(2) provides an alternate method for complying with the law. If a customer is given the cost-free ability to opt-in or opt-out of any exchange of data,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

an otherwise-covered business has no obligation to provide an STL disclosure:

> If a business that is required to comply with this section adopts and discloses to the public, in its privacy policy, a policy of not disclosing personal information of customers to third parties for the third parties' direct marketing purposes unless the customer first affirmatively agrees to that disclosure, or of not disclosing the personal information of customers to third parties for third parties' direct marketing purposes if the customer has exercised an option that prevents that information from being disclosed to third parties for those purposes, as long as the business maintains and discloses the policies, the business may comply with subdivision (a) by notifying the customer of his or her right to prevent disclosure of personal information, and providing the customer with a cost-free means to exercise that right.

Cal. Civ. Code § 1798.83(c)(2).  According to the final Senate Judiciary Committee analysis, the Legislature added this provision to "essentially provide[] businesses with a choice: respond to consumer requests for information on how their personal information is being shared, or in the alternative, provide consumers with the ability to stop their information from being shared for marketing purposes."  *See* RJN Exh. A at 200.  The purpose was to "address any concerns by the business community that the bill would create mandatory onerous disclosure requirements but still provide an appropriate baseline of consumer protections."  *Id.*

The contact notice requirements of subsection (b) do not apply to a business that chooses this opt-in/opt-out method.  On its face, subsection (b) only exists to provide the contact place "to which customers may deliver requests pursuant to subdivision (a)."  Cal. Civil Code § 1798.83(b)(1)(emphasis added).  Thus, if a business is not required to provide an information-sharing disclosure under subsection (a), it is not required to provide contact notice.[1]

---

[1] The Complaint omits any allegation about compliance option #2.  But Men's Journal contends that it complies with the alternate opt-in/opt-out method of subsection (c) and need not satisfy the contact notice obligations of subsection (b) (which is only tied to the information-sharing disclosures of subsection (a).)  The legislative history supports what is evident from the statute:  that there is no contact notice requirement if the business allows customers to opt-out of data sharing.  An analysis of SB 27 by the Senate Rules Committee confirms the exclusive purpose of the contact notice requirement is to facilitate information-sharing disclosure requests under subsection (a).  It explained that, pursuant to subsection (b), a "business must choose one of three specified options in order to ensure that customer requests [under subsection (a)] will be handled appropriately."  *See* RJN Exh. A at 182 (emphasis added).  However, for purposes this motion, the Court need not reach that issue.

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 3.   The Statutory Cause of Action for Injured Customers

The STL law provides that "[a]ny customer injured by a violation of this title may institute a civil action to recover damages." Cal. Civ. Code § 1798.84(b). Thus, a customer must be "injured" to "institute a civil action." "In addition," a customer who brings a civil action may recover a civil penalty of up to $500 per violation, and up to $3,000 per willful, intentional or reckless violation. Cal. Civ. Code § 1798.84(c). (The statute does not define what "per violation" means.)

The law also contains a safe harbor, giving businesses 90 days to cure non-willful violations of the information-sharing disclosure obligation (*e.g.*, when a business does not respond within the statutory period or gives some but not all required STL disclosures). Cal. Civ. Code § 1798.84(d). If a business cures within 90 days of learning of the defective disclosure, it has a <u>complete</u> defense against liability. This provision was adopted at the urging of industry representatives who noted the likelihood of frequent technical violations given the enormous volume of information handled by so many businesses. *See* RJN Exh. A at 201. Legislators agreed that, without such protections, businesses might end up potentially liable "to individuals who wish to use the bill's provisions as a liability trap." *Id.*

### B.   The Complaint Against Men's Journal

Men's Journal publishes *Men's Journal* magazine. Boorstein alleges he is a California resident who signed up for a one-year subscription in 2009. (Dkt. # 1, Compl. ¶¶ 36, 37). At that time, "he provided personal information to Men's Journal, including, *inter alia*, his full name, mailing address, e-mail address, ZIP code, telephone number, gender, birth date, and credit card information." (*Id.*, at ¶ 38). Boorstein alleges he "has visited www.mensjournal.com." (*Id.*, at ¶ 39). Finally, Boorstein claims Men's Journal shares customer information, including customers' names, addresses, e-mail addresses, gender, and dates of birth, with third parties for direct marketing purposes. (*Id.*, at ¶ 32).

Boorstein filed his Complaint in Los Angeles Superior Court on December 22,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2011. (Around the same time, his counsel filed at least nine other putative class actions in California state and federal courts against other publishers, with virtually identical complaints seeking penalties under the STL law.) He seeks class action status on behalf of a class of "[a]ll California residents who have provided personal information to Men's Journal," a class that Boorstein alleges "is believed to consist of millions of individuals."[2] (*Id.*, at ¶¶40-41).  On January 27, 2012, Men's Journal removed the case under the Class Action Fairness Act.

The Complaint asserts only two causes of action:  (1) violation of the STL law; and (2) a tack-on claim for violation of California's Unfair Competition Law.

### 1.   Plaintiff's Allegation of a Limited STL Violation

Ignoring the availability of the alternate opt-in/opt-out method in subsection (c) of the STL law, the Complaint focuses on an alleged failure to supply notice for the first compliance option.  The Complaint does not claim Men's Journal violated the STL law's <u>information-sharing disclosure</u> requirement.  That is, Boorstein does not allege he ever contacted Men's Journal to ask for a STL disclosure, and Men's Journal kept him "in the dark" by failing to provide an adequate or timely STL disclosure.  Thus, this case does <u>not</u> implicate the light-shining core of the statute.

Instead, the Complaint rests solely on a claim that Men's Journal did not sufficiently comply with the <u>contact notice</u> provisions of subsection (b).  Boorstein alleges Men's Journal's website failed to satisfy the notice requirements "by, among other things, (i) failing to add a hyperlink entitled 'Your Privacy Rights' to its home page, (ii) failing to add a hyperlink to a page titled 'Your Privacy Rights,' (iii) failing to designate a mailing address, e-mail address, telephone number, or facsimile number for customers to deliver requests, and/or (iv) failing to describe its California customers' rights under the Shine the Light Law." (Dkt #1, Compl. ¶ 54).  Thus, he

---

[2] In fact, the putative class is much smaller.  As explained in the declaration filed with Men's Journal's Notice of Removal, the magazine has over 50,000 subscribers in California.  (Dkt. # 2, Declaration of John Reese ¶2.)

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claims Men's Journal did not comply with the web site notice alternative in §1798.83(b)(1)(B). (*Id.*, at ¶ 53.)[3]  The Complaint, however, does not allege Boorstein ever looked at Men's Journal's Privacy Policy or otherwise sought information about how to contact Men's Journal about data-sharing issues. Indeed, Boorstein does not allege that he tried to contact Men's Journal for any reason.

Nevertheless, in an effort to allege harm, Boorstein asserts he suffered injury because his personal information "has monetary value" and "Men's Journal has diluted the value of Plaintiff's and the Class's personal property, and deprived them of the opportunity to sell their personal property for their own financial gain." (Dkt #1, Compl. ¶ 55.)  Citing a *New York Times* newspaper article from two years ago, he claims consumers now have "the opportunity to sell their personal information themselves" to companies and to "directly profit from their own data" – suggesting a marketplace exists where companies might buy data from one individual consumer at a time, rather than paying for access to full customer databases from a company like Men's Journal.[4]  (*Id.,* at ¶ 20.)  Finally, Boorstein alleges he and other class members

---

[3] Despite the fact that Men's Journal indisputably interacts with its customers primarily through its hard copy magazine, Boorstein claims Men's Journal cannot use the notice option of subsection 1798.83(b)(1)(A) because it also operates online and does not have "employees who regularly have contact with customers" and, on information and belief, does not instruct or train employees to respond to customer inquiries about obtaining STL disclosures. (Dkt #1, Compl. ¶ 50.)  Boorstein offers no factual basis for these allegations, and the Court should disregard them.  *See Vivendi SA v. T-Mobile USA, Inc.*, 586 F.3d 689, 694 (9th Cir. 2009) (rejecting allegations "on information and belief" absent allegations of facts supporting information or belief).  In fact, Men's Journal complies with the notice provisions of subsection 1798.83(b)(1)(A).  The Court, however, need not reach that issue on this motion.

[4] The *New York Times* article cited in footnote 6 of the Complaint refers to a company called Bynamite, which was supposedly developing technology for customers to monetize their own data.  *See* "You Want My Personal Data?  Reward Me For It," <http://www.nytimes.com/2010/07/18/business/18unboxed.html >.  But as Boorstein's lawyers surely know, even a cursory Internet search for Bynamite shows that the company no longer operates.  The Bynamite website now states: "We're no longer working full time on Bynamite . . . Once again, I'm sorry we can't continue to work on this."  Thus, the alleged "opportunity" for consumers to sell their own data remains doubtful at best.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6300
Fax: (213) 633-6899

have been deprived "of the ability to make informed decisions with respect to their privacy and transmission of their personal information." (*Id.*, at ¶ 56).

## 2. The UCL Cause of Action

Boorstein's second cause of action under California's Business & Professions Code §§ 17200, *et seq.*, alleges Men's Journal acted unlawfully by violating the STL law. (Dkt #1, Compl. ¶ 64). Because the UCL affords Boorstein no remedy to recover damages, Boorstein seeks "restitution of all funds wrongfully obtained by sharing and/or selling Plaintiff's and the Class's personal information"; he also seeks injunctive relief, as well as interest, attorneys' fees and costs. (*Id.*, at ¶ 66).

## C. Men's Journal's Privacy Policy

The Complaint attaches screen shots of the home page from Men's Journal's website and Men's Journal's Privacy Policy. (Dkt #1, Compl. Exhs. A-B). The bottom of the home page displays a hyperlink labeled "Privacy Policy." (*Id.*, at Exh. A). Clicking on the hyperlink brings the consumer to a page entitled "Privacy Policy," which begins: "Mensjournal.com is committed to protecting your privacy online. Please take a moment to read our policy explaining our use of the personal information that you provide and the choices you can make about the collection and use of your information by Mensjournal.com." (*Id., at* Exh. B). Below that is a "Contact Us" heading and then this text: "If you have any questions concerning this policy or the content and material on our website, or if you would like to update your personal information, you may contact us at . . . ." *Id.* The page then provides a mailing address for the customer relations department, and a hyperlink customers can click to generate an e-mail address that goes directly to the magazine. *Id.*

The Privacy Policy also contains headings such as "Providing Personal Information," "How we use personal information," and "Third party advertising and websites" that describe the categories of personal information Men's Journal collects and how it uses that information. *Id.* Under the heading "How we use personal information," the website provides consumers with the option to opt-out of receiving

9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

marketing that derives from the sharing of their data: "We may also offer you other products, programs, or services that we believe may be of interest to you. You will always have the choice to opt out of receiving these offers, updates, and information." *Id.*

In short, as the STL law requires, the Men's Journal website provided ready access to its Privacy Policy on its home page, including a hyperlink to the policy, notice of how to contact the magazine concerning any questions, and notice that the consumer would "always" have the choice to opt-out.

## III.   ARGUMENT

Rule 12(b)(6) exists to weed out undeserving complaints <u>before</u> parties engage in expensive discovery, particularly in putative class actions likely to generate significant discovery costs. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Twombly*, 550 U.S. at 570). When a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and are not entitled to a presumption of truth. *Iqbal*, 129 S. Ct. at 1949-50.

The Supreme Court's recent decisions tightening federal pleading standards began with a putative class action, in which the Court explained that a Rule 12(b)(6) motion to dismiss provides the proper means for weeding out unmeritorious complaints before a defendant must engage in burdensome discovery. *Twombly*, 550 U.S. at 559. This policy should guide the Court to dismiss this Complaint, as Boorstein failed to assert valid causes of action under either the STL or UCL laws.

---

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**A.    Boorstein Fails to State Claim Under Rule 12(b)(6) for Violation of the STL Law Because He Does Not Allege Any Cognizable Injury.**

Under the STL law, "[a]ny customer injured by a violation of this title may institute a civil action to recover damages." § 1798.84(b).  Here, even assuming *arguendo* that Men's Journal was required to comply with the <u>contact notice</u> requirements of subsection (b) of the STL law, Boorstein does not allege any cognizable injury and therefore lacks statutory standing.[5]

No published case interprets the STL law's "injury" requirement.  Thus, this Court should look to the word's plain meaning as well as analogous case law.  "In interpreting a statute to ascertain the Legislature's intent, we give the words their usual and ordinary meaning.  The statute's plain language controls unless its words are ambiguous."  *People v. Maultsby*, 53 Cal. 4th 296, 299 (2012).  The ordinary meaning of "injured" contemplates actual harm suffered by an identifiable individual. *See* Webster's New Universal Unabridged Dictionary (2d ed. 1983) (defining "injure" as "to do physical harm or damage to; to hurt," or "to wrong or offend deeply; to be unjust to").  Using that definition, Boorstein has not alleged injury.

**1.    Courts Have Rejected Boorstein's Injury Theory of Lost Monetary Value in Personal Information**

Boorstein's speculative financial injury rests on the premise that "Plaintiff's and the Class's personal information has monetary value" and that businesses will engage in transactions for that data on a consumer-by-consumer basis.  It also depends on the equally faulty notion that, assuming Men's Journal failed to display contact information for requesting STL disclosures, Men's Journal "diluted the

---

[5] Although Men's Journal also contends that Boorstein lacks Article III standing, the Court should choose to rule first on whether Boorstein has statutory standing under the STL law without having to reach the Article III issue. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97, n. 2 (1998) (approving resolution of statutory standing before Article III standing); *id.* at 115–17 (Stevens, J., concurring) (citing cases resolving other standing issues before Article III standing); *see also Blaylock v. First Am. Title Ins. Co.*, 2008 WL 8741396, *5 (W.D. Wash. Nov. 7, 2008).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

value" of Boorstein's property "and deprived [him] of the opportunity to sell [his] personal property for [his] own financial gain." (Dkt #1, Compl. ¶ 55.) But courts considering similar privacy-based claims have rejected Boorstein's injury theory when analyzing both "injury-in-fact" for Article III standing purposes and the element of damage for a breach of contract cause of action. The cases show Boorstein has not alleged "injury" sufficient to have standing under the STL law.

### a.    No "Injury-in-Fact" from Article III Cases

Rejecting Boorstein's theory, courts in the Ninth Circuit have found no injury-in-fact based on a purported property interest in the hypothetical marketing value of a consumer's personal information. In *Low v. LinkedIn*, 2011 WL 5509848, *1-2 (N.D. Cal. Nov. 11, 2011), the court dismissed federal and state law claims for lack of standing in a putative class action. The plaintiff alleged LinkedIn's disclosure of personal information to third party advertising and marketing companies deprived him of "valuable personal property without the compensation to which he was due." The court concluded the plaintiff's allegation "that his personal information has an independent economic value, and that he was not justly compensated for LinkedIn's transfer of his personal data to third party data aggregators" was "too abstract and hypothetical to support Article III standing." *Id.* at *4.

Similarly, in *La Court v. Specific Media, Inc.*, 2011 WL 2473399, at *5 (C.D. Cal. Apr. 28, 2011), a privacy case arising from collection of consumer data using website tracking cookies, the court found "the Complaint does not identify a single individual who was foreclosed from entering into a 'value-for-value exchange' as a result of" the defendant's collecting and sharing of personal information. The court dismissed for lack of Article III standing, noting that "even assuming an opportunity to engage in a 'value-for-value exchange,' Plaintiffs do not explain how they were 'deprived' of the economic value of their personal information simply because their unspecified personal information was purportedly collected by a third party." *Id.* It noted that plaintiffs "haven't offered a coherent and factually supported theory of

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  what [their actual or imminent] injury might be." *Id.*, at *6.

2  Likewise, in *In re iPhone Application Litigation*, 2011 WL 4403963, at *15

3  (N.D. Cal. Sept. 20, 2011), the district court granted a motion to dismiss a class

4  action attacking the defendants' collecting and sharing of consumer personal

5  information.  It found the plaintiffs' vague assertions of claims of economic harm

6  from the defendants' data practices did not constitute "an actual injury." *Id.*

7  This Court should interpret the injury requirement under the STL law as no

8  less rigorous than the Article III "injury-in-fact" requirement at issue in *Low*,

9  *LaCourt*, and *iPhone*.  Thus, Boorstein's Complaint fails to establish injury under the

10  STL law.  The vague allegation that Men's Journal "deprived" Boorstein "of the

11  opportunity to sell [his] personal property for [his] own financial gain" rests on no

12  allegations suggesting Boorstein tried to sell his personal data and failed or found

13  himself unable to sell the data for a price it would have fetched before.  In short, the

14  allegation amounts to pure speculation that falls far short of *Twombly*'s requirements.

15  Even accepting Boorstein's notion that businesses might engage in transactions for

16  data on a consumer-by-consumer basis, Boorstein fails to describe how he or any

17  other individual consumer was actually "foreclosed from entering into a 'value-for-

18  value exchange.'" *Specific Media, Inc.*, 2011 WL 2473399, at *5.  "While it may be

19  theoretically possible that Plaintiffs' information could lose value as a result of its

20  collection and use by Defendant, Plaintiffs do not plead any facts from which the

21  Court can reasonably infer that such devaluation occurred in this case." *Del Vecchio

22  v. Amazon.com Inc.*, 2011 WL 6325910, *3 (W.D. Wash. Dec. 1 2011).  Boorstein's

23  complaint suffers the exact same infirmity.

24  **b.  No Damage for Breach of Contract Claims**

25  The same lack of "injury" from the sale of personal date has caused district

26  courts in California to reject breach of contract theories, finding personal information

27  has no value that can trigger "damage" to consumers.  For example, the Northern

28  District of California in *In re Facebook Privacy Litigation*, 2011 WL 6176208 (N.D.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  Cal. Nov. 22, 2011), granted a motion to dismiss a putative class action in which

2  plaintiffs alleged Facebook unlawfully transmitted personal information to third-

3  party advertisers.  In dismissing a breach of contract claim, the court focused on the

4  required damage element.  It "rejected Plaintiffs' theory that their personally

5  identifiable information has value" and concluded "Plaintiffs fail to show that they

6  have suffered 'appreciable and actual damage,' which means that their breach of

7  contract claim fails."  *Id.* at *5 (quoting *Aguilera v. Pirelli Armstrong Tire Corp.*, 223

8  F.3d 1010, 1015 (9th Cir. 2000)).  On the same day, another court used the same

9  rationale to dismiss *In re Zynga Privacy Litigation*, No. Cv-10-04680 JW (N.D. Cal.

10  Nov. 22, 2011).  There, the court granted Zynga's motions to dismiss and to strike

11  class action allegations after finding that "that Plaintiffs' theory that their personally

12  identifiable information has 'value' that they have 'lost' lacks legal support, and thus

13  does not constitute a showing of 'appreciable and actual damages' in the context of

14  Plaintiffs' breach of contract claim."  *Id.* at 7.

15      Courts outside California agree.  In *In re Jetblue Airways Corp. Privacy*

16  *Litigation*, 379 F. Supp. 2d 299, 302 (E.D.N.Y. 2005), a class of plaintiffs brought

17  claims against JetBlue for allegedly unlawfully transferring their personal

18  information to a third party.  The court found they "had no reason to expect that they

19  would be compensated for the 'value' of their personal information.  In addition,

20  there is absolutely no support for the proposition that the personal information of an

21  individual JetBlue passenger had any value for which that passenger could have

22  expected to be compensated."  *Id.* at 327.  Adding that "[t]here is likewise no support

23  for the proposition that an individual passenger's personal information has or had any

24  compensable value in the economy at large," the court dismissed the plaintiffs'

25  breach of contract claim for failure to allege the required element of damages.  *Id.*

26      Similarly, in *In re DoubleClick Inc. Privacy Litigation*, 154 F. Supp. 2d 497,

27  500 (S.D.N.Y. 2001), plaintiff asserted the defendant, an online advertiser,

28  improperly gathered and disseminated the plaintiffs' personal information.  In

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   granting the defendants' motion to dismiss, the court reasoned that the plaintiffs had

2   failed to plead cognizable damages. *Id.* at 525. "[A]lthough demographic

3   information is valued highly . . . the value of its collection has never been considered

4   a[n] economic loss to the subject. Demographic information is constantly collected

5   on all consumers by marketers, mail-order catalogues and retailers. However, we are

6   unaware of any court that has held the value of this collected information constitutes

7   damage to consumers or unjust enrichment to collectors." *Id.*

8       Here, Boorstein's assertion of injury closely resembles the theory that the

9   *Facebook, Zynga, Jet Blue Airways,* and *DoubleClick* plaintiffs unsuccessfully

10   advanced to show "damage." Although Boorstein does not assert a breach of

11   contract claim, his alleged "injury" turns on his claim that he was "deprived" of the

12   ability to sell his personal data, or that its value was somehow diluted. However, the

13   law consistently holds that consumers do not have an expectation of compensation

14   for personal information they disclose to third parties in the course of ordinary

15   transactions. Even if such an expectation existed, Boorstein fails to include any

16   allegation that supports a finding that he tried – and failed – to sell his personal data

17   due to some action by Men's Journal. Absent such an allegation, Boorstein's

18   purported injury is theoretical at best

19       Nor does Boorstein's claim gain traction because he alleges Men's Journal's

20   actions diluted the price at which he could sell his data to third-parties (if a market

21   for such consumer-by-consumer data sales existed). The STL law does <u>not</u> prohibit

22   Men's Journal from sharing Boorstein's data with third-party marketers; for that

23   reason, it does not protect Boorstein against the possibility that the price for selling

24   his own data might fall if Men's Journal shared his data as the STL law allows. Even

25   if the statute recognized such an injury, Boorstein includes no allegation to support a

26   finding that Men's Journal's conduct diluted the value of his personal data.

27       Moreover, assuming Boorstein could ever make such allegations, any dilution

28   of value in his personal data would be so miniscule as to be meaningless. When it

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

enacted the STL law, the California Legislature was made aware that the value to an individual customer of his or her data is *de minimis* at best. A report from the Electronic Privacy Information Center in the bill's file explained that consumer data profiles "can be purchased at surprisingly low prices. Many companies will sell information at a cost of $65 per million names." *See* RJN Exh. A at 81. At that rate, Boorstein's individual data would be worth a mere $.000065. Of course, Boorstein does even seek recovery of that full amount; his "injury" is limited to any dilution in the price he could fetch for his own data due to Men's Journal's supposed violations. Loss of some amount less than $.000065 can hardly be called an "injury."

### 2. The Alleged Lack of Contact Notice on the Men's Journal Web Site Has Not Injured Boorstein

Boorstein's other assertion of injury is similarly defective. The Complaint alleges Men's Journal "deprives [him] and the Class of the ability to make informed decisions with respect to their privacy and transmission of their personal information" because of its purported failure to comply with formalities of the §1798.83(b)(1)(B) web site notice option. But no injury arises from claimed hyper-technical violations of this ancillary portion of the statute.

The legislative history shows the core purpose of the STL law is to give consumers the means to obtain a disclosure about how their information was shared. A legislative analysis of SB 27, issued by the Senate Judiciary Committee on May 6, 2003, explained that "[t]he core concept of the bill is consumers' ability to request and receive information from businesses on how and when their information is being shared for marketing purposes." *See* RJN Exh. A at 65. A covered business's violation of that information-sharing disclosure requirement (in subsection 1798.83(a)) might injure a consumer. But Boorstein alleges no facts showing that a failure to comply with technical provisions of the contact notice obligation (which, on the face of subsection 1798.83(b), exists only to support the information-sharing disclosure requirement) gave rise to an injury warranting relief — let alone a civil

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1  penalty amount payable to all Men's Journal subscribers in California, even if they

2  never sought the STL notice.

3       The existence of a 90-day safe harbor period for <u>information-sharing</u>

4  <u>disclosure</u> obligations, but not for the <u>contact notice</u> requirements, supports this

5  conclusion.  The Legislature did not intend the law to be a "liability trap," so it gave

6  businesses a chance to cure information-sharing disclosure defects.  *See* RJN at Exh.

7  A at 201.  But if injury sufficient for standing to sue could arise <u>solely</u> out of the

8  failure to adequately provide contact notice (without regard to whether a business

9  complied with the more important information-sharing disclosure obligations), the

10  STL law would become the perfect liability trap.  That liability trap would allow

11  customers to sue without regard to whether they looked for the contact notice in

12  order to request a STL disclosure, sought a STL disclosure, or suffered any adverse

13  impact from the content of the contact notice.  It would make no sense for the

14  Legislature to permit businesses to cure violations of the law's primary purpose (i.e.,

15  defective STL disclosures about how consumer information is shared with third-

16  parties) but to impose automatic liability on businesses for technical violations of the

17  secondary contact notice component (which exists merely to tell consumers where to

18  contact a business to get the information-sharing disclosures), with no opportunity to

19  cure.  This "would 'frustrate[] the manifest purposes of the legislation as a whole or

20  [lead] to absurd results,'" and courts should interpret a statute —"[e]ven [an]

21  unambiguous statute[]"—to avoid such a result.  *Upland Police Officers Ass'n v. City*

22  *of Upland*, 111 Cal. App. 4th 1294, 1304 (2003).  Thus, the Court should interpret

23  the STL statute to find that any injury supporting an action must arise out of a

24  violation of the <u>information-sharing disclosure</u>, not the <u>contact notice</u>, requirements.

25       But even if injury could flow from failure to meet the <u>contact notice</u>

26  obligations, Boorstein does not allege injury caused by any technical omissions on

27  the Men's Journal website.  He pleads only that he visited the website.  (Dkt. # 1,

28  Compl. ¶ 39.)  Boorstein does not allege that he tried to request a STL disclosure or

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1   contact Men's Journal about his data.[6]  Nor does he claim that he tried to find the

2   magazine's Privacy Policy or contact notice on the web site and failed, or that he

3   tried to exercise the opt-out option in the Privacy Policy and failed.  Boorstein

4   identifies no specific privacy decisions he was unable to make, and sets forth no facts

5   showing how Men's Journal's alleged omissions deprived him of his ability to make

6   choices.  Instead, without alleging how he was deprived and what he was deprived

7   of, Boorstein proffers mere legal conclusions, which cannot save his Complaint.  *See*

8   *Iqbal*, 129 S. Ct. at 1950; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

9           Moreover, the "violations" of the STL law alleged by Boorstein are so hyper-

10  technical that no customer could reasonably claim injury from them and indeed

11  Boorstein cannot.  For example, in paragraph 54(i) and (ii) of the Complaint,

12  Boorstein contends that Men's Journal failed to "add a hyperlink entitled 'Your

13  Privacy Rights' to its home page" and failed to "add a hyperlink to a page titled

14  'Your Privacy Rights'" as required by section 1798.83(b)(1)(B).  But the home page

15  of the Men's Journal web site (Exhibit A to the Complaint) contains a "Privacy

16  Policy" link and the privacy web page (Exhibit B to the Complaint) is entitled

17  "Privacy Policy."  The difference between "Privacy Policy" and "Your Privacy

18  Rights" in these locations is immaterial, and Boorstein cannot seriously suggest he

19  lost privacy choices or suffered injury because one phrase was used over the other.

20  Likewise, in paragraph 54(iii) of the Complaint, Boorstein contends that Men's

21  Journal failed "to designate a mailing address, e-mail address, telephone number, or

22  facsimile number for customers to deliver [STL] requests."  But as reflected in

23  Exhibit B to the Complaint, the Men's Journal Privacy Policy provided a mailing

24  address for its customer relations department and even a hyperlink customers can

25

26  _____

27  [6] This omission is critical because the Complaint speculates only "on
    information and belief" that Men's Journal cannot invoke the other two methods to
    provide contact notice - in particular, that it does not instruct or train employees to

28  respond to customer inquiries for STL disclosures pursuant to §1798.83(b)(1)(A).
    (Dkt #1, Compl. ¶ 51).

18

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 click to generate an e-mail to the company.  These two mechanisms satisfy the

2 requirement of subsection 1798.83(b)(1) to designate contact information for

3 customers to deliver a request for STL disclosure (assuming *arguendo* that

4 requirement applies to Men's Journal).  Boorstein cannot claim any violation, let

5 alone actual injury, from this published contact information.[7]

6   Taken as a whole, the language, structure and history of the STL law indicate

7 the Legislature intended not to over-burden businesses and not to confer liability for

8 hyper-technical violations such as those alleged by Boorstein.  Thus, even assuming

9 the contact notice requirements apply to Men's Journal, the Complaint fails to allege

10 cognizable injury and Boorstein lacks standing to bring a STL claim.

11 **B.**  **Boorstein Fails to State a Claim under the UCL**

12   The Court should dismiss the UCL claim for three independent reasons.  <u>First</u>,

13 the cause of action depends on the failed STL claim.  The UCL applies to any

14 "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code

15 § 17200.  When a UCL cause of action borrows from another statute to establish the

16 "unlawful" prong, it necessarily hinges on the success of the plaintiff's claim under

17 the borrowed statute.  If a plaintiff fails to state a claim under the borrowed statute,

18 the plaintiff's UCL claim must also fail.  *See Renick v. Dun & Bradstreet Receivable*

19 *Mgmt. Servs.*, 290 F.3d 1055, 1058 (9th Cir. 2002) (rejecting UCL claim because it

20 "hinges on" another rejected claim); *Krantz v. Bt Visual Images*, 89 Cal. App. 4th

21 164, 178 (2001); *Van Ness v. Blue Cross of Cal.*, 87 Cal. App. 4th 364, 376-77

22 (2001).  Here, Boorstein's Complaint explicitly borrows from the STL law when

23

24

---

25   [7]Indeed, if Boorstein's Complaint can survive this motion to dismiss, Men's Journal will prove in the case that it substantially complied with the STL law,

26 providing yet another complete defense.  *See Stasher v. Harger-Haldeman*, 58 Cal. 2d 23, 30 (1962) (doctrine of substantial compliance is applied to avoid anomalous

27 results in statutory claims, particularly when requiring strict technical compliance would "give a windfall" where "the purpose of the statute is merely to protect, not to

28 enrich."); *Samuels v. Delucchi*, 286 F.2d 504, 506 (9th Cir. 1961) (applying substantial compliance in interpreting California law where it was "in keeping with the underlying purpose of the statute").

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

asserting its UCL cause of action by alleging that "Men's Journal has violated the unlawful prong of the UCL in that its conduct violated the Shine the Light Law, Cal. Civ. Code § 1798.83." (Dkt #1, Compl. ¶ 64). As Boorstein has failed to state a claim for relief under the STL law, the Court should also dismiss his UCL claim.

Second, the UCL claim fails to allege that Boorstein suffered an injury in fact and lost money or property. Since California voters amended the UCL by passing Proposition 64 in 2004, "a private person has standing to sue only if he or she 'has suffered injury in fact and has lost money or property as a result of such unfair competition.'" *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006) (quoting Bus. & Prof. Code § 17204). For the UCL claim, Boorstein alleges he and putative class members suffered injury because their "personal information has monetary value," and Men's Journal's purported violation of the STL law's notice requirement "diluted the value" of this property and "deprived them of the opportunity to sell their personal property for their own financial gain." (Dkt #1, Compl. ¶ 65.) This theory fails for the same reasons it did not trigger STL injury. *See Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1098 (N.D. Cal. 2011) (plaintiffs' failure to allege any cognizable harm under California's misappropriation statute meant they also failed to allege injury in fact and loss of money or property under the UCL); *Ruiz v. Gap, Inc.*, 540 F. Supp. 2d 1121, 1127 (N.D. Cal. 2008) (dismissing UCL claim by rejecting plaintiff's "contention that unauthorized release of personal information constitutes a loss of property"); *In re iPhone Application Litig.*, 2011 WL 4403963 at *14 ("Numerous courts have held that a plaintiff's 'personal information' does not constitute money or property under the UCL.").

Third, Boorstein fails to state a claim justifying either of the UCL remedies he seeks: (1) restitution of funds wrongfully obtained by Men's Journal from sharing

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

consumer information, and (2) injunctive relief.[8]  The UCL makes restitution available only to compel a "defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property or those claiming through that person." *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126-27 (2000).  As discussed above, Boorstein's theory of monetary value in his personal information has no merit.  In addition, his Complaint fails to allege any contractual relationship or other basis suggesting that money earned by Men's Journal from sharing Boorstein's information with third-party advertisers rightfully belongs to Boorstein.  After all, sharing customer information remains a lawful practice after passage of the STL law.  Even accepting Boorstein's theory that the market value for him to sell his own data is diminished, he never had any ownership interest in funds paid by third-party marketers to Men's Journal.  In short, Boorstein has no basis to claim he is entitled to any monies received from the sale of collective data and thus Men's Journal owes Boorstein no money that should be restored via restitution.[9]

For the same reason, Boorstein has not stated a claim that supports injunctive relief.  *See Cohen*, 798 F. Supp. 2d at 1098 (UCL plaintiff who fails to allege loss of money or property cannot obtain injunctive relief).  Thus, the Complaint fails to allege facts supporting a cause of action or any recoverable remedy under the UCL.

---

[8] For his UCL claim, Boorstein also seeks interest, attorneys' fees and costs, remedies not expressly set forth in the UCL.  Even if permitted by other statutes, such remedies would still require Boorstein to have a valid claim for UCL relief.

[9] The "restitution" sought by Boorstein is really "nonrestitutionary" disgorgement of a defendant's ill-gotten profits.  But disgorgement is no longer a remedy available for UCL claims, including in class actions.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1140 (2003) (disgorgement of profits is not an authorized remedy in individual UCL action "where these profits are neither money taken from a plaintiff nor funds in which the plaintiff has an ownership interest"); *Feitelberg v. Credit Suisse First Boston, LLC*, 134 Cal. App. 4th 997, 1020 (2005) (after passage of Proposition 64, *Korea Supply* rule barring nonrestitutionary disgorgement remedy under UCL also applies to class actions); *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 460 (2005) ("[N]onrestitutionary disgorgement is not an available remedy in a UCL class action.").

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## C. The Court Should Dismiss the Complaint Under Rule 12(b)(1) for Lack of Article III Standing

### 1. Boorstein Does Not Allege Injury-In-Fact for Article III Purposes

As discussed above, the Court should dismiss the Complaint for lack of standing under the STL law.  For the same reasons, it can also dismiss for lack injury in fact to support Article III standing (although it should first address and resolve statutory standing issues).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).  These requirements are needed to establish the "irreducible constitutional minimum of standing." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998).  If a plaintiffs cannot establish standing, "the suit should be dismissed under Rule 12(b)(1)." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

Article III requires a plaintiff to allege a "distinct and palpable" injury, *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 100 (1979) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)), that is "certainly impending," if not already suffered. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979). "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40, n. 20 (1976)).

Article III standing presents an independent issue separate from whether a

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

plaintiff has standing under a particular statute (here, the STL law). *See Steel Co.*, 523 U.S. at 97 (statutory standing "has nothing to do with whether there is case or controversy under Article III"); *Cetacean Cmty.*, 386 F.3d at 1175 (if plaintiff lacks statutory standing, "the suit should be dismissed under Rule 12(b)(6)"). [10]

As summarized in section III.A.1.a above, courts have consistently rejected Boorstein's theory of injury when dismissing privacy class actions for failure to establish Article III standing. Based on that same authority, the Court can also dismiss this case for lack of injury in fact sufficient to maintain Article III standing.

## 2.   Boorstein Does Not Have Standing Merely Because the STL Law Provides a Private Right of Action

The mere fact that the STL law provides a private right of action does not mean Boorstein has an actual "injury" sufficient to confer standing. It is "settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).

In that regard, the Ninth Circuit's decision in *Edwards v. First American Corp.*, 610 F.3d 514, 517 (9th Cir. 2010), *cert. granted*, 131 S. Ct. 3022 (2011) does

---

[10] Men's Journal may challenge lack of Article III standing even though it removed this case from state court. "A defendant's power to remove a case to federal court is independent of the federal court's power to hear it. These are analytically distinct inquiries and should not be confused. Once a case is properly removed, a district court has the authority to decide whether it has subject matter jurisdiction over the claims." *State of Neb. ex rel. Dept. of Social Services v. Bentson*, 146 F. 3d 676, 679 (9th Cir. 1998). In *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997 (9th Cir. 2001), the Ninth Circuit, in addressing a motion to dismiss a UCL claim for lack of Article III standing, explained that removal jurisdiction is a different question than subject matter jurisdiction, and stated that the "[plaintiff's] standing problem simply does not implicate the question whether . . . the requirements for diversity jurisdiction [are met]." *Id.* at 1005. Judge Kozinski's concurring opinion further explains that when the requirements for diversity jurisdiction are met, "the case is removable and our inquiry ends," and a court will consider standing as a separate inquiry "at the next step." *Id.* at 1008. *See also Jadeja v. Redflex Traffic Systems, Inc.*, 764 F. Supp. 2d 1192 (N.D. Cal. 2011) (after defendants removed and defeated an attempt to remand, court granted motion to dismiss for lack of Article III standing).

DEFENDANT'S MOTION TO DISMISS COMPLAINT
DWT 19144871v2 3920109-000008

not control.  In *Edwards,* the plaintiff alleged she bought a house using a settlement agent that had an unlawful kickback arrangement with First American, resulting in a charge to her of $455.43 for title insurance.  She alleged First American charged her a fee in violation of the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607.  The Ninth Circuit found the plaintiff adequately pled standing when she alleged the two elements of her claim for violation of RESPA — *i.e.,* (1) payment by one covered business to another of a kickback or split of a loan fee, and (2) plaintiff's payment of a fee to one of the businesses for title insurance — even though the alleged kickback did not <u>increase</u> the fee she paid.  610 F.3d at 517-18.  But *Edwards* has no bearing here.  The plaintiff in *Edwards* alleged she <u>paid a fee</u> under circumstances which the statute prohibited which the court found met the necessary standing.  However, the statute in *Edwards* did not require "injury" as the STL law requires, and is distinguishable for that additional reason.  Boorstein pleads no financial detriment or any other legally cognizable harm that has any nexus to alleged unlawful activity by Men's Journal (*i.e.,* purported failure to comply with the STL law's contact notice requirements).  Therefore, *Edwards* is not applicable.[11]

Because Boorstein lacks Article III standing, the Court should dismiss his Complaint pursuant to Rule 12(b)(1).

---

[11] In any event, the Supreme Court granted First American's petition for a writ of certiorari to resolve whether the Ninth Circuit's holding that the plaintiff suffered sufficient injury under Article III conflicted with the "actual" injury standing requirement articulated in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). *See First Am. Fin. Corp. v. Edwards,* 131 S. Ct. 3022 (2011).  The Court heard oral argument last November.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## IV.   CONCLUSION

Boorstein's Complaint is a misguided attempt to take advantage of the STL law to obtain a large monetary recovery, when Men's Journal kept neither Boorstein nor any other putative class member "in the dark" or caused them any cognizable legal injury. The Court should dismiss the Complaint in its entirety with prejudice, and without leave to amend.

DATED:  March 2, 2012

DAVIS WRIGHT TREMAINE LLP
JAMES D. NGUYEN
SEAN M. SULLIVAN
ELIZABETH MCNAMARA
DAN LAIDMAN


By:   ____s/James D. Nguyen____
             James D. Nguyen

Attorneys for Defendant
MEN'S JOURNAL LLC

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899