Sean Reis (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

*Counsel for Plaintiff and the putative class*

*Additional counsel for Plaintiff appear on signature page

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| DAVID BOORSTEIN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MEN'S JOURNAL LLC, a Delaware corporation, <br><br> Defendant. | Case No. 12-CV-00771-DSF-E <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** <br><br> Date:  June 4, 2012 <br> Time:  1:30 pm <br> Ctrm:  840 <br><br> [Hon. Dale S. Fischer] <br><br> State Action Filed: December 22, 2011 <br> Removed: January 27, 2012 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ...................................................................................... 1

STATEMENT OF FACTS ......................................................................... 2

ARGUMENT ............................................................................................. 4

I.      PLAINTIFF IS NOT REQUIRED TO PLEAD DAMAGES IN ORDER TO SATISFY STATUTORY STANDING, RATHER HE MUST SHOW INJURY, WHICH PLAINTIFF HAS SATISFIED ........ 5

     A.    Boorstein Has Pled That He Suffered Injury Because He Alleges That He Was Denied Information To Which He Was Statutorily Entitled .................................................................................. 5

          1.    The Act requires "violation" to cause the "injury"—which is precisely what Plaintiff alleges ................................ 7

          2.    Boorstein is not required to show that he tried to obtain Shine the Light disclosures beyond accessing Defendant's website ........................................................................... 8

          3.    Defendant's violation of subdivision (b) results in injury— Defendant cannot claim it was "close enough" to satisfying the Act to avoid liability, and the 90-day cure provision has no application to subdivision (b) ......................................... 9

          4.    Boorstein has met his pleading burden to show causation ... 12

     B.    Boorstein Has Also Adequately Pled That He Suffered Damages Because Men's Journal Deprived Him of the Ability to Control the Dissemination of His Personal Information .............................. 12

          1.    The "Article III" authorities cited by Men's Journal are inapposite .......................................................................... 13

          2.    The "Breach of Contract" authorities cited by Men's Journal are inapposite ...................................................... 14

          3.    Men's Journal misconstrues Boorstein's supposed "benefit of the bargain" theory—Men's Journal had a statutory obligation to provide certain disclosures, which it failed to do, thus depriving Boorstein of value ..................................... 16

II.     BOORSTEIN ENJOYS STANDING UNDER THE UCL BECAUSE MEN'S JOURNAL CAUSED A DIMINUTION IN THE VALUE OF HIS PERSONAL INFORMATION ............................................................. 17

**III.  BOORSTEIN PLEADS ARTICLE III STANDING BECAUSE HE ALLEGES MEN'S JOURNAL DEPRIVED HIM OF HIS STATUTORY PROTECTIONS AS WELL AS HIS PRIVACY RIGHTS** ............................................................... 20

**CONCLUSION** ............................................................................. 22

## **TABLE OF AUTHORITIES**

**UNITED STATES SUPREME COURT CASES**

*ARCO v. U.S.A. Petroleum Co.,* 495 U.S. 328 (1990)................................. 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................... 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007)............................ 4

*E. River S.S. Corp. v. Transamerica Delavel*, 476 U.S. 858 (1986) ...................... 16

*Fed. Election Com'n v. Akins*, 524 U.S. 11 (1998) ............................. 6

*First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (2011)............................ 1

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........................ 6, 9

*Mass. v. E.P.A.*, 549 U.S. 497 (2007) ........................................ 20

*Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989)................................ 6, 9, 20

*Warth v. Seldin*, 422 U.S. 490 (1975).......................................... 6, 20

**UNITED STATES CIRCUIT COURT OF APPEALS CASES**

*Birdsong v. Apple, Inc.,* 590 F.3d 955 (9th Cir. 2009). ......................... 17

*Edwards v. First Am. Corp.,* 610 F.3d 514 (9th Cir. 2010)...................... 5-6, 20, 21

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614
   (9th Cir. 2008) ......................................................... 6, 17, 20, 21

*Gray v. Shell Oil Co.*, 469 F.2d 742 (9th Cir. 1972) ........................... 7-8

*Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000 (9th Cir. 2011)...................... 4

*Palmer v. United States*, 945 F.2d 1134 (9th Cir. 1991) ......................... 11

*Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332 (9th Cir. 1990)............... 15

*Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817 (9th Cir. 1995) .................. 5

*St. Clair v. City of Chico*, 880 F.2d 199 (9th Cir. 1989) ........................ 5

*Stein v. Pac. Bell*, 172 F. App'x 192 (9th Cir. 2006) .............................. 8

*Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010) .................. 11, 11 n.3

**UNITED STATES DISTRICT COURT CASES**

*Claridge v. RockYou*, 785 F. Supp. 2d 855 (N.D. Cal. 2011) ................. 19

*Del Vecchio v. Amazon.com Inc.*, No. C11-366, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011) ................................................................ 14

*Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016 (C.D. Cal. 2010) ............................................................... 5

*Fineman v. Sony Network Entm't Int'l LLC*, No. C 11-05680 SI, 2012 WL 424563 (N.D. Cal. Feb. 9, 2012) ............................................. 18-19

*Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2011 WL 6303898 (N.D. Cal. Dec. 16, 2011) ............................................................ 6, 19

*Glover v. Wagner*, 462 F. Supp. 308 (D. Neb. 1978) ............................ 16

*Havenstrite v. Hartford Life Ins. Co.*, No. 08-CV-410-GKF-PJC, 2008 WL 5450375 (N.D. Okla. Dec. 21, 2008) ......................................... 19

*In re Am. Airlines, Inc. Privacy Litig.*, No. 3:04-MD-1627-D, 2005 WL 3323028 (N.D. Tex. Dec. 7, 2005) ................................. 13, 16, 19

*In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 15

*In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011) ..... 5-6, 14, 21

*In re iPhone Application Litig.*, No. 11-md-02250, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............................................................ 13

*In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005) ............................................................... 15

*LaCourt v. Specific Media, Inc.*, No. 10-cv-1256, 2011 WL 2473399 (C.D. Cal. Apr. 28, 2011) ........................................................ 13, 14

*Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951 (9th Cir. 1994) ...................................................................... 8

*Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, CIV. S071015LKK/EFB, 2007 WL 2492436 (E.D. Cal. Aug. 30, 2007) ......................... 16-17

*Low v. LinkedIn*, No. 11-cv-01468, 2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) .................................................................... 13

*Rowe v. UniCare Life and Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391 (N.D. Ill. Jan. 5, 2010) ......................................................... 13, 19

*Sargeant v. Dixon*, 130 F.3d 1067 (D.C. Cir. 1997) ............................ 6

*United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163 (C.D. Cal. 2009) ........................................................ 16

*Weil Ins. Agency, Inc. v. Manufacturers Life Ins. Co.*, 815 F. Supp. 1320 (N.D. Cal. 1992) ............................................................................................. 8

*Wyatt v. Ralphs Grocery Co.*, No. SACV001260DOCEEX, 2002 WL 32985841 (C.D. Cal. Apr. 1, 2002) .......................................................... 15

*Zivotofsky ex rel Ari Z. v. Sec'y of State*, 444 F.3d 614 (D.C. Cir. 2006) ................ 6

**STATE COURT CASES**

*Animal Legal Def. Fund v. Mendes*, 72 Cal. Rptr. 3d 553 (Cal. Ct. App. 2008).... 17

*Kwikset Corp. v. Super. Ct.*, 246 P.3d 877 (Cal. 2011) ......................................... 18

**STATUTES AND FEDERAL RULES**

Cal. Civ. Code § 1798.83 ....................................................................... *passim*

Cal. Civ. Code § 1798.84 ....................................................................... *passim*

Cal. Bus. & Prof Code §§ 17200 *et seq*. ........................................................ 4

Cal. Penal code § 637.2(c) ...................................................................... 8

Federal R. Civ. P. 12(b)(1) ................................................................. 4, 5

Federal R. Civ. P 12(b)(6) ...................................................................... 4

**INTRODUCTION**

Defendant Men's Journal LLC ("Defendant" or "Men's Journal") operates its business as if California's Shine the Light Law (the "Shine the Light Law" or the "Act"), Cal. Civ. Code § 1798.83 does not exist. Unfortunately for Men's Journal, the Act exists and Defendant violates it as a matter of routine policy. The Shine the Light Law requires businesses that share their customers' personal information with third parties ("qualified businesses") to respond to customer requests about what categories of personal information the businesses share and with whom. To that end, qualified businesses must: (1) designate a mailing address, email address, telephone number, or facsimile number for customers to deliver the requests, and (2) use one of the three alternative methods to provide the designated address or number to customers under § 1798.83(b)(1)(A)-(C)—i.e., by (A) training certain employees, (B) disclosing the information on their website along with a statement of their customers' rights under the Act, or (C) making the information readily available at their California brick-and-mortar locations. Plaintiff Boorstein ("Boorstein")—a Men's Journal customer—alleges that Defendant neglects both obligations.

In hopes of avoiding liability, Men's Journal—a well-known publishing company that operates the website www.mensjournal.com and publishes *Men's Journal* magazine—argues that Boorstein lacks statutory standing under the Act because he fails to allege a cognizable injury. Failing that, Men's Journal falls back on the popular argument of the day—spurred by the Supreme Court's recent grant of *certiorari* in the case of *First Am. Fin. Corp. v. Edwards*, 131 S.Ct. 3022 (2011)— that Boorstein lacks Article III standing.

Men's Journal's arguments lack merit. First, Men's Journal asserts that Boorstein cannot satisfy statutory standing because, supposedly, being deprived of the protections afforded under the Act itself is insufficient, Boorstein did not allege that he made a request under subdivision (a) of the Shine the Light Law, and because

Boorstein's theory depends on "hyper-technical violations" of the statute. These attacks fail. Boorstein alleges that he suffered injury as a result of Defendant's failure to disclose information that it was required to post on its website. Although Defendant's lament that its violation of subdivision (b) is "hyper-technical," it is sufficient to have caused Boorstein injury.

Men's Journal's next argument—that Boorstein fails to plead "damages"—also falls apart. The Act requires injury, not damages. And even if Boorstein's loss of privacy rights under the Act were somehow insufficient to show that he has both Article III and statutory standing, Boorstein alleges that his personal information has value and that Men's Journal caused a diminution of that value. Boorstein therefore alleged "damages" and has standing to support his UCL claims.

Accordingly, and as explained further below, this Court should deny Men's Journal's Motion to Dismiss.

## STATEMENT OF FACTS

### *Men's Journal collects and sells its customers' personal information to third parties for direct marketing purposes*

Men's Journal publishes magazines for circulation and operates the website www.*mensjournal.com*. (Compl. ¶ 31.) To subscribe to Men's Journal's magazines or websites, customers must disclose personal information to Men's Journal, including their name, address, e-mail address, telephone number, gender, date of birth, and credit or debit card number. (*Id.* ¶ 32.) Men's Journal maintains this information on its servers. (*Id.* ¶ 33.) Men's Journal also profits by selling its customers' personal information to third parties, who use that information for direct marketing purposes. (*Id.* ¶¶ 8, 34.)

Boorstein, a California resident, subscribed to Defendant's *Men's Journal* magazine in or around August 2009. (*Id.* ¶¶ 38, 39.) As with Men's Journal's other customers, Boorstein was required to disclose his name, mailing address, email

address, telephone number, gender, birth date, and credit card information when subscribing to the magazine. (*Id.* ¶ 40.) Boorstein has since received and read *Men's Journal*. (*Id.* ¶ 41.) He has also visited www.mensjournal and viewed Men's Journal's privacy policy located on its website at www.mensjournal.com/privacy-policy. (*Id.*)

### Men's Journal's privacy policy does not contain disclosures required by the Act

Despite the fact that Men's Journal collects and discloses its customers' personal information to third parties for direct marketing purposes, Men's Journal violates the Shine the Light Law. While Men's Journal maintains an online Privacy Policy, this policy fails to describe the customers' rights pursuant to the Act, stating instead that:

> From time to time, we may use the personal information you provide us to send you information regarding Men's Journal magazine and/or Mensjournal.com features and subscriptions . . . We may also offer you other products, programs, or services that we believe may be of interest to you. You will always have the choice to opt out of receiving these offers, updates, and information.

(*See* Privacy Policy, a true and accurate copy of which is attached as Exhibit A.)[1]

### Plaintiff Boorstein's Complaint and Amended Complaint

On December 22, 2011, Boorstein filed his Class Action Complaint in the Superior Court of California, County of Los Angeles, alleging that Men's Journal

---

[1] Defendant contends that it complies with what it deems "Compliance Path #2" and therefore is not required to comply with subdivision 1798.83(b). (*See* Def. Mot. 3, n.2.) This is not true. Not only do Defendant's disclosures fall short of the requirements of 1798.83(c)(2), businesses must comply with subdivision (b)'s disclosure requirements regardless of whether they provide the opportunity to opt-out and otherwise comply with subdivision (c)(2). Subdivision (c)(2) provides an alternative *response* that the business can provide to customers who seek information—the business may respond by informing the customer about the right to opt-out (so long as (c)(2)'s other provisions are followed) instead of disclosing to the customer the parties it shares information with, and the type of information shared. Nowhere does subdivision (b) indicate that its provisions—including those that help facilitate requests and responses under subdivision (a)—are negated by compliance with (c)(2).

3

violated California's Shine the Light Act, § 1798.83(b), and engaged in unlawful behavior in violation of California's Unfair Competition Law, Cal. Bus. & Prof Code §§ 17200 *et seq.* (the "UCL") (Compl. ¶¶ 47-66.) On January 27, 2012, Men's Journal removed the case to the United States District Court for the Central District of California (Dkt. 1), and on March 2, 2012, Men's Journal moved to dismiss Boorstein's Complaint (Dkt. 10). On March 26, 2012, Plaintiff filed a First Amended Class Action Complaint ("Complaint"), again alleging that Men's Journal violated the Shine the Light Law and UCL. (Dkt. 17.)

### *Men's Journal's Motion to Dismiss*

On April 23, 2012, Defendant moved to dismiss Boorstein's First Amended Complaint in its entirety pursuant to Federal Rule Civil Procedure 12(b)(6) and 12(b)(1). Under Rule 12(b)(6), Defendant argues that Boorstein fails to allege a cognizable injury and therefore lacks statutory standing. Under Rule 12(b)(1), Defendant argues that Boorstein lacks Article III standing. As explained below, none of Defendant's theories have merit and the Motion to Dismiss should be denied.

### ARGUMENT

"On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). While federal pleading standards require more than "formulaic recitation of the elements" or "naked assertions," a complaint survives dismissal where it allows the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555-57 (2007)).

A complaint may be dismissed for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Motions to dismiss for lack of jurisdiction are governed by the

standard pleading rules of Fed. R. Civ. P. 8(a). *Dichter-Mad Family Partners, LLP v. United States*, 707 F. Supp. 2d 1016, 1025 (C.D. Cal. 2010). The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion, *see Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995), and the court can look beyond the complaint and "rely on affidavits or any other evidence properly before the court." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## I.   PLAINTIFF IS NOT REQUIRED TO PLEAD DAMAGES IN ORDER TO SATISFY STATUTORY STANDING, RATHER HE MUST SHOW INJURY, WHICH PLAINTIFF HAS SATISFIED.

Men's Journal argues that Boorstein lacks statutory standing because he does not allege injury and/or damages. In doing so, Men's Journal confuses "injury" with "damages," and improperly uses the terms interchangeably throughout its argument. (*See* Def. Mot. 8-20.) To be sure, a customer must show injury (not damages) to establish standing under the Shine the Light Law. Subdivision 1798.84(b) provides that a customer who is "injured by a violation" may recover "damages." Damages are therefore an available remedy—not a requirement for standing. Boorstein therefore has standing under the Shine the Light law because, regardless of actual damages, Boorstein has alleged that he suffered injury.

### A.   Boorstein Has Pled That He Suffered Injury Because He Alleges That He Was Denied Information To Which He Was Statutorily Entitled.

First, Boorstein has pled that he suffered injury because he alleges Defendant failed to provide information to which Boorstein was statutorily entitled. (*See, e.g.,* Compl. ¶ 62.) As the district court held in *In re Facebook Privacy Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), injury can "exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 711 (quoting *Edwards v. First Am. Corp.,* 610 F.3d 514, 517 (9th Cir.2010)) (citation omitted); *see also Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 618-19 (9th Cir.

2008) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "[T]he standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500; *see also Fraley v. Facebook, Inc.*, No. 11-CV-01726-LHK, 2011 WL 6303898, at *10 (N.D. Cal. Dec. 16, 2011) (finding that plaintiffs' claims that advertising practices violated their rights under California statute satisfied the injury-in-fact Article III standing requirement).

Likewise, the Supreme Court has held that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Fed. Election Com'n v. Akins*, 524 U.S. 11, 21 (1998) (citing *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (failure to disclose information pursuant to Federal Advisory Committee Act "constitutes sufficiently distinct injury to provide standing to sue"); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374 (1982) (injury in fact when information required under the Fair Housing Act was withheld); *Sargeant v. Dixon*, 130 F.3d 1067, 1070 (D.C. Cir. 1997) ("The receipt of information is a tangible benefit the denial of which constitutes an injury."); *Zivotofsky ex rel Ari Z. v. Sec'y of State*, 444 F.3d 614, 617-18 (D.C. Cir. 2006) (citing *Coleman*, 455 U.S. at 374).

Boorstein can thus show injury—he alleges that he was deprived of Shine the Light Law disclosures that he claims he was statutorily entitled to receive. *See Fulfillment Servs.*, 528 F.3d at 618-19. Pursuant to subdivision (b), Men's Journal is obligated to include in its privacy policy a description of "a customer's rights" under the Act and "provide the designated mailing address, e-mail address . . . or toll-free number or facsimile number, as appropriate." § 1798.83(b). Men's Journal never made this information available—via its website or otherwise. Thus, Boorstein and the other putative class members were deprived of information they should have

1   received such that they suffered injury in fact and thus meet the test for statutory

2   standing. Men's Journal's arguments that Boorstein has not adequately pled "injury"

3   are unfounded. (*See* Def. Mot. 8-20.)

4        Men's Journal claims, rather ineffectively, that Boorstein's supposed

5   "informational injury" theory fails because it (1) demands a "circular reading" of the

6   statute, (2) Boorstein did not allege that he tried to obtain information required by

7   the Shine the Light Law, (3) Boorstein's theory depends on "hyper-technical

8   violations" of the statute, and (4) Boorstein fails to show causation. (Def. Mot. 14-

9   18.) These arguments also fail, as explained below.

10        **1.    The Act requires "violation" to cause the "injury"—which is precisely what Plaintiff alleges.**

11        First, Men's Journal argues that Plaintiff does not have "informational"

12   standing because "the claimed violation cannot itself be the injury" under the Act.

13   (Def. Mot. 14.) Once again, Defendant conflates terms that are not synonymous and

14   misconstrues Plaintiff's allegations. Plaintiff alleges that the violation (*i.e.*, failure to

15   provide information) led to the injury (*i.e.*, deprived access to information). (Compl.

16   ¶ 41.) Indeed, Defendant violated the Act *regardless* of whether Boorstein actually

17   visited the Men's Journal website because Defendant qualifies as a "business

18   required to comply with the [Act]" and because it failed to post information under

19   subdivision (b). *See* § 1798.83(b)(1). Defendant's "violation" then caused "injury"

20   when Boorstein actually visited the Men's Journal website and viewed the deficient

21   pages. This position is consistent with the actual language of the Act (which,

22   notably, Defendant does not quote) which confers standing on "[a]ny customer

23   injured by a violation of this title . . . ." *See* § 1798.84(b).

24        Defendant cites *Gray v. Shell Oil Co.*, 469 F.2d 742, 749 (9th Cir. 1972) to

25   support its position that the "claimed violation cannot be the injury." (*See* Def. Mot.

26   14). However, *Gray* (an antitrust law) discusses § 4 of the Clayton Act and, as the

27

Supreme Court explains, "the right of action under § 4 of the Clayton Act is available only to those private plaintiffs who have suffered *antitrust* injury." *ARCO v. U.S.A. Petroleum Co.,* 495 U.S. 328, 344 (1990) (emphasis added). The "Supreme Court has held consistently that antitrust injury is not to be equated with injury in fact." *See Weil Ins. Agency, Inc. v. Manufacturers Life Ins. Co.*, 815 F. Supp. 1320, 1323 (N.D. Cal. 1992) *aff'd sub nom. Legal Econ. Evaluations, Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951 (9th Cir. 1994). The Shine the Light law is not an antitrust law and does not require antitrust injury.

Men's Journal's next argument—that that the Act only confers standing on those who have incurred actual damages (*See* Def. Mot. 14)—belies the Act's plain language, which specifically allows litigants to recover a "penalty" for each Shine the Light Law violation:

> In addition, for a willful, intentional, or reckless violation of Section 1798.83, a customer may recover a civil penalty not to exceed three thousand dollars ($3,000) per violation; otherwise, the customer may recover a civil penalty of up to five hundred dollars ($500) per violation for a violation of Section 1798.83.

(1798.84(c)). As such, the Act specifically confers standing to Boorstein to recover a "penalty" for Men's Journal's statutory violations. And, in any event, as explained in §II(B), below, Boorstein has alleged actual damages. Thus, Defendant's "actual damages" argument is a nonstarter.

### 2. Boorstein is not required to show that he tried to obtain Shine the Light disclosures beyond accessing Defendant's website.

Men's Journal next asserts that Boorstein lacks standing because he "does not even allege that he tried to obtain any information required by the [Act]." (*See* Def. Mot. 15.) A recent opinion by Judge Feess, in the case of *Baxter v. Rodale, Inc.*, No. 12-cv-00585 (C.D. Cal.), rejected a similar argument under the Shine the Light law:

> for purposes of standing, the proper inquiry is the number people who have subscribed through, registered with, or logged on to

Rodale's websites, and have thus agreed to be bound by the policy which Plaintiff alleges violates California's Shine the Light Law. (*See* Order, *Baxter v. Rodale, Inc.*, No. 12-cv-00585, Dkt. 35, at 3 (C.D. Cal. Apr. 20, 2012), attached hereto as Exhibit B.) Therefore, that Boorstein both logged onto the website *and* viewed the privacy policy is more than sufficient to create standing. (*See id.*) (Compl. ¶ 41.)

Defendant argues that the Supreme Court authority (on which Plaintiff relies) demands something more—namely, that Plaintiff allege he specifically sought out Shine the Light disclosures. (*See* Def. Mot. 15.) This theory misconstrues the case law. While the plaintiffs in *Pub. Citizen* and *Havens Realty Corp.* requested information, the Court in *Fed. Election Com'n* did not impose an affirmative obligation on them to request information. Rather, the Court found standing from plaintiffs' "inability to obtain" information because the defendant failed to make such information "public." *See* 524 U.S. at 21. Similarly here, Boorstein could not have possibly obtained certain information that he was guaranteed under § 1798.83(b) (*i.e.*, a description of his "rights pursuant to [the Act]" and a "designated mailing address, e-mail address, . . . or toll-free telephone") because Men's Journal failed to make such information "public" by posting the information in its privacy policy. It is Defendant's failure to "make public" certain information that creates standing—not Boorstein's fruitless effort to seek out information that is conspicuously absent. *See Fed. Election Com'n*, 524 U.S. at 21.

Boorstein doesn't need to allege that he specifically sought out Shine the Light disclosures. That he accessed the website and viewed the privacy policy is enough to confer standing.

> **3.  Defendant's violation of subdivision (b) results in injury—Defendant cannot claim it was "close enough" to satisfying the Act to avoid liability, and the 90-day cure provision has no bearing on subdivision (b).**

Defendant further argues that Plaintiff's theory arises from a "hyper-technical

violation" from which no true injury can arise. In doing so, Defendant portrays subdivision (b) as an "ancillary portion" of the statute that exists solely to support subdivision (a). Defendant is wrong as such a reading places certain violations of the Act beyond judicial enforcement and renders subdivision (b) meaningless.

Subdivision (b) imposes an affirmative obligation on all "business[es] required to comply with this section" (*i.e.*, required to comply with the Act). Subdivision (b) states that covered businesses "shall" designate the appropriate addresses or telephone numbers and fulfill at least one of the alternatives set forth in § 1798.83(b)(1)(A)–(C). Defendant's interpretation would gut the entire Act— qualified businesses would be able to insulate themselves from liability (and keep their information sharing practices a secret) by ignoring it altogether and depriving their customers of the information they would need to submit a Shine the Light request in the first instance.

Defendant's next argument—that the 90-day cure period for information-sharing disclosures supports its position—also has no merit. And, there is no need to speculate as to why the 90-day cure period is only available for "information disclosure" requests, but not subdivision (b) requirements. As Defendant's own authority explains:

> [T]he committee has preferred to approve a right to cure only in circumstances where there is a high likelihood that compliance will be difficult or complex . . . this bill meets those factors because of the large volume of information in the possession of some businesses, and the frequency with which it is made available for a variety of purposes.

(*See* Def. Mot., Request for Judicial Notice ("RJN"), Exhibit A, 201.) Therefore, unlike the disclosure requirements of subdivision (b) (which involve a small amount of static information), the 90-day cure period is appropriate for subdivision (a) requests because such requests may involve large quantities of ever-changing information.

Next, Defendant posits that being 'close to compliance' is 'good enough' to satisfy its customers' needs and that Defendant cannot actually be held to the plain letter of the law. (*See, e.g.,* Def. Mot. 17) ("The difference between "Privacy Policy" and "Your Privacy Policy" is immaterial.") This Court should refuse to substitute the Defendant's judgment for that of the Legislature. Even if Defendant was 'close to compliance' (it was not), the Legislature imposed specific obligations on qualified businesses—and put in quotation marks the specific language they wanted used. Men's Journal was obligated to comply as a qualified business pure and simple. This Court should not re-write the statute to permit supposed alternative modes of compliance.[2] *See Palmer v. United States*, 945 F.2d 1134, 1136 (9th Cir. 1991) (court may not "rewrite the plain language of a state statute"). Men's Journal's position undercuts the statute's plain language and, if accepted, would open the door to frivolous defenses wherein statutory violations are spun into examples of "near compliance."

Finally, Defendant cannot plausibly argue that subdivision (b) is purely procedural and thus Plaintiff does not have standing. Subdivision (b) requires Men's Journal to disclose specific information in its privacy policy, including a description of "a customer's rights" under the Act. *See* § 1798.83(b). Therefore, unlike the provision at issue in *Wilderness Soc'y, Inc. v. Rey*, 622 F.3d 1251 (9th Cir. 2010), which required the Secretary of Agriculture to establish notice and comment procedures through the Chief of the United States Forest Service for proposed decisions related to land and resource management projects, subdivision (b) creates

---

[2]     Besides, Men's Journal also violated the statute by failing to designate a mailing address, email address, telephone number, or facsimile number for customers to deliver requests, and failing to describe its California customers' rights under the Shine the Light Law. *See* § 1798.83(b)(1)(B). (Complaint ¶ 60.)

an "independent right to information" and is, therefore, not merely procedural.[3]

Therefore, Defendant's arguments that Plaintiff does not have standing because subdivision (b) is "hyper-technical" and because it imposes supposed procedural rights have no merit.

### 4.   Boorstein has met his pleading burden to show causation.

Finally, Defendant argues that Boorstein does not allege facts to show causation—*i.e.*, facts to tie Defendant's violation of subdivision (b) to injury suffered by Defendant. As explained above, *see* supra I(A), Boorstein can show injury because he alleges that he was deprived of Shine the Light Law disclosures that he was statutorily entitled to receive. Boorstein alleges that Defendant failed to make certain disclosures in its privacy policy (the "how") as set forth in subdivision (b) (the "what"). This is sufficient to satisfy the standing inquiry.

### B.   Boorstein Has Also Adequately Pled That He Suffered Damages Because Men's Journal Deprived Him of the Ability to Control the Dissemination of His Personal Information.

In any case, Boorstein pleads that he suffered damages when Men's Journal deprived him and other class members of the ability to control dissemination of their personal information, which in turn diluted the value of his information. (Compl. ¶ 64.) The market for personal information has grown rapidly with the development of the Internet and digital media. (*Id.* ¶ 15.) More than 10 years ago, the Federal Trade Commissioner recognized that "the digital revolution . . . has given an enormous capacity to the acts of collecting and transmitting and flowing of information, unlike anything we've ever seen in our life . . . [and] individuals are concerned about being defined by the existing data on themselves." (*Id.*)

---

[3]   Notably, Defendant also misrepresents the rule with regard to informational injury and standing. (*See* Def. Mot. 18) (stating "procedural injury, standing on its own, cannot serve as an injury-in-fact"). In full, the rule goes on to say that standing related to injury-in-fact may be established where a "concrete and particular project" is "connected to the procedural loss." *See Wilderness*, 622 F.3d at 1260.

This increased capacity to transmit information has given rise to a new marketplace that enables consumers to sell their personal information or engage in *quid pro quo* transactions with online businesses whereby individuals exchange personal information for services. (*Id.* ¶¶ 17-18.) As with any other good, once personal information is sold to third party marketers, the market for that information necessarily decreases and, likewise, its value is diminished. *Cf. Rowe v. UniCare Life and Health Ins. Co.*, No. 09 C 2286, 2010 WL 86391, at *8 (N.D. Ill. Jan. 5, 2010) (finding sufficiency of dilution of personal value claims at the motion to dismiss stage); *In re Am. Airlines, Inc. Privacy Litig.*, No. 3:04-MD-1627-D, 2005 WL 3323028, at *1-2 (N.D. Tex. Dec. 7, 2005) ("Based on the allegation that plaintiffs have been denied the economic value of their personal information, the court declines to dismiss their . . . claim.").

### 1.    The "Article III" authorities cited by Men's Journal are inapposite.

While Men's Journal cites Article III cases discussing the *collection* of personal information, none involve the subsequent sale of personal information to third parties for direct marketing purposes, and none consider the customer's ability to profit from the sale of his or her personal information, which is central to Plaintiff's claim. *See Low v. LinkedIn*, No. 11-cv-01468, 2011 WL 5509848, at *1-2 (N.D. Cal. Nov. 11, 2011) (plaintiffs failed to allege how he was foreclosed from capitalizing on the value of his personal data or how he was deprived of the economic value of his personal information" where his information was merely collected by a third party); *LaCourt v. Specific Media, Inc.*, No. 10-cv-1256, 2011 WL 2473399, at *5 (C.D. Cal. Apr. 28, 2011) (plaintiffs arguing that "by taking and retaining [plaintiffs'] personal information," *i.e.*, their browsing history, defendant has deprived plaintiffs of this information's economic value).

In *In re iPhone Application Litig.*, No. 11-md-02250, 2011 WL 4403963

(N.D. Cal. Sept. 20, 2011) the court did not take issue with the type of damages asserted by plaintiffs, but rather found plaintiffs "[did] not allege injury in fact to *themselves*." (*See id.* at *4) ("Plaintiffs do not identify what iDevices they used, do not identify which Defendant (if any) accessed or tracked their personal information, do not identify which apps they downloaded that access/track their personal information, and do not identify what harm (if any) resulted from the access or tracking of their personal information."). Likewise, in *Del Vecchio v. Amazon.com Inc.*, No. C11-366, 2011 WL 6325910 (W.D. Wash. Dec. 1, 2011), the court did not specifically decide if the asserted damages could qualify under the CFAA but rather determined that they could not meet the $5,000 minimum threshold required to be at issue. *See id.* at *3.

Further, the *LaCourt* court explained that it "would recognize the viability in the abstract of such concepts as 'opportunity costs,' 'value-for-value exchanges,' 'consumer choice,' and other concepts . . ." had plaintiffs "give[n] some particularized example of their application in [the] case." 2011 WL 247339, at *4. Here, because Men's Journal actually sold Boorstein's personal information, there are particularized examples in the form of each and every third party marketer who purchased Boorstein's information from Men's Journal for direct marketing purposes. (*See* Compl. ¶¶ 34, 37.) Therefore, Boorstein has alleged that his information has value and that such value has been diminished by Men's Journal's conduct.

### 2. The "Breach of Contract" authorities cited by Men's Journal are inapposite.

Likewise, the "breach of contract" cases cited by Defendant are inapposite in that they are limited to breach of contract damages, which Plaintiff does not seek. This distinction is meaningful because under California contract law, "nominal damages and speculative harm do not suffice to show legally cognizable damage." *In*

*re Facebook Privacy Litig.*, 2011 WL 6176208, at *4 (breach of contract claim fails because plaintiffs do not show that they have suffered "appreciable and actual damage").

The Act, however, does not preclude recovery of nominal damages, *see* § 1798.84, and California courts have permitted the recovery of nominal damages for statutory violations. *See, e.g., Peer Int'l Corp. v. Pausa Records, Inc.,* 909 F.2d 1332, 1336-37 (9th Cir. 1990) (awarding statutory damages under Copyright Act where plaintiff suffered only nominal damages, in part because of deterrent effect); *Wyatt v. Ralphs Grocery Co.*, No. SACV001260DOCEEX, 2002 WL 32985841, at *1 (C.D. Cal. Apr. 1, 2002) (awarding Plaintiff nominal damages of $1 and a statutory penalty of $1000 for ADA violation).

Relying on the "breach of contract" damages rule, Men's Journal claims that the value of data would be "so miniscule as to be meaningless." (*See* Def. Mot. 13.) In support of this position, Men's Journal cites a third party report that purportedly shows that personal information has little value. (*See* Def. Mot. 13.) While nominal damages may not support a breach of contract claim, they may very well satisfy the Shine the Light law. Further, Plaintiff is not required to establish—in his initial pleadings—evidence to support his *prima facie* case, including evidence as to the full market value of his personal information. *See Gibson*, 781 F.2d at 1340. This information can and will be determined through discovery.

Another case cited by Men's Journal, *In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005), actually supports Boorstein's position. *Id.* at 327 (refusing to recognize contract damages, but acknowledging that the "loss of the economic value of [plaintiffs'] information . . . sounds in economic loss"); *see also In re Doubleclick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) (only discussing the collection of personal information).

Finally, while the Act permits companies to sell personal information (*see* Def. Mot. 13), it requires that such companies provide specific disclosures regarding such sales. Men's Journal failed to make those disclosures and has thus caused injury to Boorstein and the Class.

### 3. Men's Journal misconstrues Boorstein's supposed "benefit of the bargain" theory—Men's Journal had a statutory obligation to provide certain disclosures, which it failed to do, thus depriving Boorstein of value.

Men's Journal further argues that Boorstein cannot claim damages based upon its failure to provide disclosures because Boorstein does not allege that consumers expect that Men's Journal will provide statutorily guaranteed disclosures when consumers subscribe to *Men's Journal* and access the website. (*See* Def. Mot. 18-19) (Compl. 65.) This argument strains credulity.

When entering into an agreement, customers have a reasonable expectation that the other party will abide by all applicable state and federal laws. *See, e.g., Glover v. Wagner*, 462 F. Supp. 308, 311 (D. Neb. 1978) (where business "actively seeks and receives benefits from the other state, he must also abide by the laws of that state"). While Men's Journal denigrates its customers' expectations as "preposterous," Men's Journal was doing business in California and California consumers reasonably expected that Men's Journal would abide by California laws and provide Shine the Light disclosures.

Further, Men's Journal's attempt to apply the economic loss doctrine cannot prevail. The economic loss doctrine only applies to breach of contract and tort damages, neither of which Plaintiff is seeking. (*See* Def. Mot. 19) (citing *E. River S.S. Corp. v. Transamerica Delavel*, 476 U.S. 858, 872 (1986) (plaintiff could not state tort); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009) (only applying economic loss doctrine to tort claim); *Lincoln Gen. Ins. Co. v. Access Claims Adm'rs, Inc.*, CIV. S071015LKK/EFB, 2007

WL 2492436 (E.D. Cal. Aug. 30, 2007) (economic loss doctrine "prevent [s] the law of contract and the law of tort from dissolving one into the other") (citation omitted).

Men's Journal's other cases are readily distinguishable. In *Birdsong v. Apple, Inc.*, the plaintiffs did "not even claim that they used their iPods in a way that exposed them to the alleged risk of hearing loss." 590 F.3d 955, 960 (9th Cir. 2009). Boorstein subscribed to Men's Journal, visited the website, and viewed the privacy policy in question. In *Animal Legal Def. Fund v. Mendes*, 72 Cal. Rptr. 3d 553, 560 (Cal. Ct. App. 2008), the plaintiffs did not state facts to show that the product (milk) was of inferior quality or value, and did not allege that the seller had made false representations regarding the treatment of animals that could be considered "part of the bargain." Boorstein does not claim false representations or breach of warranty— he asserts that the plain language of subdivision (b) required Men's Journal to make certain disclosures, which it failed to do. Boorstein has alleged damages because he had a reasonable expectation that Men's Journal would provide disclosures in accordance with California law, and Men's Journal failed to do so.

Accordingly, even if Boorstein is required to plead "damages" (he is not), he has cleared that hurdle. In the end, Boorstein has Shine the Light standing because he alleges that Defendant deprived him of information to which he was statutorily entitled, causing him injury in the process. *See Fulfillment Servs.*, 528 F.3d at 618-19.

## II. BOORSTEIN ENJOYS STANDING UNDER THE UCL BECAUSE MEN'S JOURNAL CAUSED A DIMINUTION IN THE VALUE OF HIS PERSONAL INFORMATION.

Boorstein alleges facts to satisfy standing under the UCL. With respect to this claim, Defendant first argues—incorrectly—that Plaintiff fails to plead unlawful conduct. (Def. Mot. 20-21.) As stated above, Boorstein alleges that Men's Journal violated the Shine the Light Law and therefore can state a claim for unlawful

conduct. Defendant also incorrectly asserts that Boorstein failed to allege that "he lost any money or property" as a result of Men's Journal's wrongful conduct and therefore cannot establish standing under the UCL. (*Id.*) To the contrary, Plaintiff alleges that his personal information has monetary value that diminished as a result of Men's Journal's conduct. (Compl. ¶ 64.)

While Men's Journal claims that Plaintiff cannot satisfy UCL standing for multiple reasons (Def. Mot. 21), all of its assertions focus on whether Boorstein has set forth sufficient allegations to demonstrate economic injury, which, as explained throughout this brief, Boorstein has satisfied. There "are innumerable ways in which economic injury from unfair competition may be shown." *Fineman v. Sony Network Entm't Int'l LLC*, No. C 11-05680 SI, 2012 WL 424563, at *2 (N.D. Cal. Feb. 9, 2012). "A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Id.* (citing *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 885 (Cal. 2011)).

Although courts have been hesitant to recognize "personal information" as cognizable property under the UCL, *see, e.g., Thompson v. Home Depot, Inc.,* No. 07cv1058 IEG, 2007 WL 2746603, at *3 (S.D. Cal. Sept. 18, 2007), as described in section (I)(D) *supra*, the market for personal information has matured with the development of the Internet and digital media such that data has become a new form of currency, enabling companies to raise millions of dollars by selling its customers' information to advertisers. (Compl. ¶¶ 15-20.) Because Plaintiff's personal information has value, and because Men's Journal diminished the value of this information by disclosing it to third party marketers without properly advising

Plaintiff of his legally proscribed rights under the Act, Plaintiff has suffered from a diminished "[p]resent . . . property interest" and therefore can establish UCL standing. (*See* Compl. ¶¶ 9, 21, 64); *see also Fineman*, 2012 WL 424563, at *2.

Boorstein's claim for restitution also survives because Men's Journal was not acting in compliance with the Shine the Light Law when it sold Plaintiff's personal information, and because Plaintiff has a property interest in his personal information. "A plaintiff may obtain restitution . . . against . . . unlawful practices in order to protect the public and restore to the parties in interest money or property taken by means of unfair competition." *Stearns v. Select Comfort Retail Corp.*, No. 08-2746 JF, 2009 WL 1635931, at *17 (N.D. Cal. June 5, 2009). While the Act permits companies to sell personal information (*see* Def. Mot. 22), it requires that such companies provide specific disclosures regarding such sales. Men's Journal cannot hide behind the Act in claiming legal authority to sell Boorstein's information. *See, e.g., Claridge v. RockYou*, 785 F. Supp. 2d 855, 860-61 (N.D. Cal. 2011) (plaintiff alleged a "generalized injury in fact" based upon defendant's failure to safeguard the PII exchanged for its services, which "caused plaintiffs to lose the 'value' of their PII."); *Am. Airlines*, 2005 WL 3323028, at *1-2.

Further, Boorstein enjoys an ownership interest in the personal information collected and subsequently sold by Men's Journal. *See, e.g., Rowe*, 2010 WL 86391, at *8 (finding sufficiency of property interest in personal information at the motion to dismiss stage); *see also, e.g., Am. Airlines*, 2005 WL 3323028, at *1-2; *Havenstrite v. Hartford Life Ins. Co.*, No. 08-CV-410-GKF-PJC, 2008 WL 5450375, at *4 (N.D. Okla. Dec. 21, 2008) (finding economic harm where personal information was misused by defendant for its economic gain); *Fraley*, 2011 WL 6303898, at *20 (plaintiffs "have a vested interest in their own right of publicity").

Boorstein has therefore stated a claim for restitution of monies unlawfully

obtained by Men's Journal from the sale of his personal information. Likewise, Boorstein has alleged that he suffered economic harm from Men's Journal's unlawful practices. Boorstein has established UCL standing.

### III. BOORSTEIN PLEADS ARTICLE III STANDING BECAUSE HE ALLEGES MEN'S JOURNAL DEPRIVED HIM OF HIS STATUTORY PROTECTIONS AS WELL AS HIS PRIVACY RIGHTS.

Men's Journal advances a "back-up" argument that Boorstein's Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of Article III standing. (Def. Mot. 23.) Boorstein alleges facts to satisfy Article III because he pleads that Defendant denied him of a statutory right or protection created by the Act and, in doing so, deprived him of access to information to which he was statutorily entitled.

To establish Article III standing, a plaintiff must demonstrate that: (1) he has "suffered a concrete and particularized injury that is either actual or imminent" (i.e., injury-in-fact), (2) the injury is "fairly traceable to the defendant," and (3) a "favorable decision" will likely redress the plaintiff's injury. *See Mass. v. E.P.A.*, 549 U.S. 497, 517 (2007). As explained in section (I)(A), *supra*, Article III injury can "exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Edwards*, 610 F.3d at 517 (9th Cir.2010) (citation omitted); *see also Fulfillment Servs.*, 528 F.3d at 618-19 (quoting *Warth*, 422 U.S. at 500 (1975). Likewise, a plaintiff suffers an "injury in fact" and therein establishes Article III standing when the defendant fails to disclose information, which must be disclosed pursuant to a statute. *See Fed. Election Com'n*, 524 U.S. at 21; *see Pub. Citizen*, 491 U.S. at 449 (finding a "sufficiently distinct injury to provide standing to sue" where defendant fails to disclose information pursuant to Federal Advisory Committee Act).

Men's Journal's attempt to distinguish *Edwards* is unavailing. (*See* Def. Mot. 25.) That the plaintiff in *Edwards* paid a fee does nothing to diminish Boorstein's

theory. *RESPA* confers standing on a "person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of *any charge paid* for such settlement service." *Edwards*, 610 F.3d at 517. The phrase "charged" creates a cognizable connection between the plaintiff and the defendant. Similarly, the Act grants standing to a customer who is "injured by a violation." § 1798.84(b). Thus, there is a cognizable tie between the plaintiff and the defendant's wrongful behavior. In *Edwards*, plaintiff's affirmative act consisted of paying a fee, even though no actual damages were suffered. Here, Boorstein accessed the website and viewed the privacy policy. (*See* Compl. 41) (*see also* Order, Ex. B.) [4] Thus, both Edwards and Boorstein established Article III standing because in both instances, there existed a sufficient nexus between them and the defendants' wrongful behavior.

Boorstein has therefore established Article III standing. He alleges that he was deprived of Shine the Light disclosures, that Men's Journal caused the deprivation by failing to make the disclosures on its website, and that statutory penalties and injunctive relief—resulting from a favorable decision—will adequately redress his injuries. (*See* Compl. ¶¶ 35-37, 62-65); *see Facebook*, 791 F. Supp. 2d at 711. These allegations demonstrate injury-in-fact (*i.e.*, failure to disclose information), *see Fed. Election Com'n*, 524 U.S. at 21, adequately tie the injury to Defendant's actions, and demonstrate that Plaintiff—as a Men's Journal customer who has received *Men's Journal* magazine, visited the website, and viewed the privacy policy—will benefit from a favorable decision on the matter. *See E.P.A.*, 549 U.S. at 517. Plaintiff has has Article III standing as Men's Journal denied him information to which he was statutorily entitled. *See Fulfillment Servs.*, 528 F.3d at 618-19.

---

[4]     Defendant once again attempts to distinguish *Edwards* because the Shine the Light Law contains the word "injury." As described in section I(A)(1), *supra*, this argument has no merit.

## CONCLUSION

Plaintiff Boorstein respectfully requests that the Court deny Men's Journal's Motion to Dismiss in its entirety. Men's Journal's interpretation of the Shine the Light Law, and the obligations that it imposes on a qualified business, is flawed and threatens to strip the statute of much of its protections. Likewise, Plaintiff Boorstein has set forth sufficient factual allegations to satisfy both Article III and statutory standing. Men's Journal should not be permitted to avoid responsibility for its failure to apprise Boorstein of his rights pursuant to California's Shine the Light Law.

Dated:  May 14, 2012

Respectfully submitted,

DAVID BOORSTEIN, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

By: /s/ Sean P. Reis
One of Plaintiff's attorneys

Sean P. Reis (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Tel: (949) 459-2124
Fax: (949) 459-2123

Megan Pekala (*Pro Hac Vice*)
Edelson McGuire LLC
999 West 18th Street Suite 3000
Denver, Colorado 80202
Tel: 303-357-4979
Fax: 303-446-9111
mpekala@edelson.com

## CERTIFICATE OF SERVICE

I, Sean Reis, an attorney, hereby certify that on May 14, 2012, I served the foregoing ***Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) & 12(b)(6)*** by filing it with the Clerk of Court using the CM/ECF system. The document was served on all counsel who are deemed to have consented to electronic service via the CM/ECF system.


/s/ Sean Reis